O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Hokto Kinoko Company, | CV 10-1384 RSWL (PLAx) |
| Plaintiff and Counterdefendant, | **ORDER re: Plaintiff Hokto Kinoko's Motion for Summary Judgment and for Permanent Injunction [65], Third-Party Defendant Hokuto Corporation's Motion for Summary Judgment [66], and Defendant, Counterclaimant, and Third-Party Plaintiff Concord Farms, Inc.'s Motion for Summary Judgment [100]** |
| v. | |
| Concord Farms, Inc. | |
| Defendant, Counterclaimant, and Third-Party Plaintiff, | |
| v. | |
| Hokuto Corporation, LTD. | |
| Third-Party Defendant. | |

On August 9, 2011, Plaintiff Hokto Kinoko Company's ("Hokto Kinoko") Motion for Summary Judgment and for Permanent Injunction [65], Third-Party Defendant Hokuto Corporation's ("Hokuto Japan") Motion for Summary Judgment [66], and Defendant, Counterclaimant, and Third-Party Plaintiff Concord Farms, Inc.'s ("Concord") Motion for Summary Judgment [100] came on for regular

1

calendar before this Court.  The Court having reviewed all papers submitted pertaining to these Motions and having considered all arguments presented to the Court, **NOW FINDS AND RULES AS FOLLOWS:**

The Court **GRANTS** Plaintiff Hokto Kinoko's Motion for Summary Judgment as well as Plaintiff's Request for a Permanent Injunction.  Furthermore, the Court **GRANTS** Third-Party Defendant Hokuto Japan's Motion for Summary Judgment in its entirety.  Lastly, the Court **DENIES**, in its entirety, Defendant, Counterclaimant, and Third-Party Plaintiff Concord's Motion for Summary Judgment.

## I.   BACKGROUND

Plaintiff and Counterdefendant Hokto Kinoko is a corporation organized under the laws of the State of California on July 3, 2006. Hokto Kinoko is a wholly-owned subsidiary of Third-Party Defendant Hokuto Japan. Hokto Kinoko undertook the construction of a growing facility in San Marcos, California, which was completed in 2009. Shortly thereafter, Hokto Kinoko began growing and selling its mushrooms in the United States.

Hokto Kinoko sells its mushroom products under a family of trademarks (collectively referred to as the "Hokto Marks")[1]. Plaintiff Hokto Kinoko grows,

---

[1] The Hokto Marks at issue in these Motions for Summary Judgment refer to the following trademark registrations: (3,210,268),(3,179,700),(3,182,866), and (3,182,867).  However, in Plaintiff's First Amended Complaint ("FAC"), Plaintiff originally listed ten registered trademarks: (3,185,838), (3,185,839), (3,185,840), (3,210,268), (3,179,700), (3,182,865),

distributes, and markets "100% Certified Organic" speciality mushrooms throughout the United States. Hokto Kinoko's mushrooms include maitake, brown beech, and white beech mushrooms.

From June 28, 2010, Hokto Kinoko has been the owner of the U.S. rights in the Hokto Marks by virtue of an assignment from its parent company, Hokuto Japan. However, from August 2008 to June 28, 2010, Hokto Kinoko was the exclusive U.S. licensee of Hokuto Japan under the Hokto Marks.

From August 2008 to the first quarter of 2009, Hokto Kinoko imported into the United States and sold organically grown maitake, brown beech, and white beech mushrooms bearing the Hokto Marks that were produced in Japan by Hokuto Japan. Hokto Kinoko was the exclusive licensed distributor of Hokuto Japan products in the United States during this period. The mushrooms imported by Hokto Kinoko for the U.S. market were grown under special conditions not normally used by Hokuto Japan. Specifically, the growing media was changed to meet the United States Certified Organic standards. Moreover, Hokuto Japan and Hokto Kinoko developed special packaging for Hokto Kinoko's use in the U.S. market that used the English language, as compared to Hokuto Japan's normal Japanese language packaging. The English language packaging identified the product as

---

(3,182,866) (3,200,594), (3,182,867), (3,723,744). Hokto Kinoko is the owner of all 10 federal registered trademarks.

"Certified Organic by QAI" and provided nutritional
facts.

Shortly after Hokto Kinoko began producing
mushrooms in its San Marcos facility in California,
Hokuto Japan ceased exporting mushrooms bearing the
Hokto Marks to the United States. An exception occurred
in 2010, when Hokto Kinoko could not meet demand due to
capacity issues in the production of white beech
mushrooms. Hokto Japan white beech mushrooms were
imported to augment Hokto Kinoko's inventory of these
mushrooms. These imported white beech mushrooms from
Japan contained English language stickers indicating
the country of origin and nutritional facts.

Third-Party Defendant Hokuto Japan is an
organization organized under the laws of Japan with its
principal place of business in Nagano, Japan. Hokuto
Japan grows, sells, and distributes in Japan mushrooms
contained in distinctive packaging with Hokuto Japan
trademarks.  These Japanese trademarks are identical to
Hokto Kinoko's U.S. Marks. However, because "Organic
Certification" is not as important to the average
Japanese consumer as compared to the American consumer,
Hokuto Japan does not go to the added expense to grow
its mushrooms under Organic Certified conditions.

Defendant and Third-Party Plaintiff Concord is a
corporation organized under the laws of the State of
California, with a principal place of business in Union
City, California. Concord grows and imports a variety
of agricultural products that are distributed across

the United States in bulk and retail packs. Since 1987, Concord has distributed exotic Asian mushrooms and produce across the United States.

Since 2003, Concord Farms has been purchasing mushrooms distributed by Hokuto Japan through and from Hokuto Japan's authorized suppliers. However, Concord has never purchased mushrooms directly from Hokuto Japan. Rather, Concord purchases Hokuto Japan mushrooms from a company called MRT, who in turn, purchases the mushrooms from a separate company called Maruichi Seika Co., Ltd. (hereinafter, "Maruichi"). Maruichi purchases mushroom products from Hokuto Japan for resale in Japan.

In July 2009, a Hokto Kinoko representative purchased packages of mushrooms bearing one or more of the Hokto Kinoko U.S. Marks and written mostly in Japanese from two different retail outlets in Irvine, California.  The Hokto Kinoko representative was informed that the retail establishments had purchased the packaged mushrooms from Defendant and Third-Party Plaintiff Concord.  In October 2009, Hokto Kinoko representatives attended a produce exposition in Anaheim, California where they spoke with a Concord representative requesting that Concord not import, sell, or distribute Hokuto Japan packaged mushrooms. Concord refused to comply with Hokto Kinoko's request and, as a result, this dispute between the parties ensued.

During the period from 2003 to February 2009, Concord imported and sold non-organic white beech and brown beech mushrooms grown by Hokuto Japan packaged in all Japanese language packages.  However, since February 2009, Concord has not imported or sold brown or white beech Hokto branded mushrooms, but only now imports maitake mushrooms from Japan bearing the Hokto Marks.  Therefore, during the pendency of this Action, the only infringing mushroom products that have been imported and sold by Concord are the maitake mushrooms.

## II. LEGAL STANDARDS

A. Summary Judgment

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue is one in which the evidence is such that a reasonable fact-finder could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party can satisfy this burden by: (1) presenting evidence that negates an essential element of the non-moving party's case or (2) demonstrating that the non-moving party failed to establish an essential element of the non-moving

1  party's case on which the non-moving party bears the
2  burden of proving at trial.  Id. at 322-23.

3      Once the moving party establishes the absence of
4  genuine issues of material fact, the burden shifts to
5  the non-moving party to set forth facts showing that a
6  genuine issue of disputed fact remains.  Celotex, 477
7  U.S. at 322.  However, the non-moving party is required
8  by Federal Rules of Civil Procedure, Rule 56(e)[2] to go
9  beyond the pleadings and designate specific facts
10 showing that there is a genuine issue for trial.  Id.
11 at 324.  Conclusory allegations unsupported by factual
12 allegations are insufficient to create a triable issue
13 of fact so as to preclude summary judgment.  Hansen v.
14 United States, 7 F.3d 137, 138 (9th Cir. 1993)(citing
15 Marks v. Dep't of Justice, 578 F.2d 261, 263 (9th Cir.
16 1978)).  A non-moving party who has the burden of proof
17 at trial must present enough evidence that a
18 "fair-minded jury could return a verdict for the
19 [opposing party] on the evidence presented."  Anderson,
20 477 U.S. at 255.

21

22     B. Permanent Injunction
23     Courts apply "traditional equitable principles" in
24 deciding whether to grant a permanent injunction:

25

26     [2] The Federal Rules of Civil Procedure were amended
27 on December 01, 2010. Federal Rules of Civil Procedure,
   Rule 56(e) has now been codified as Federal Rules of
28 Civil Procedure, Rule 56(c).

1    [A] plaintiff seeking a permanent injunction must
2    demonstrate: (1) that it has suffered an
3    irreparable injury; (2) that remedies available at
4    law, such as monetary damages, are inadequate to
5    compensate for that injury; (3) that, considering
6    the balance of hardships between the plaintiff and
7    defendant, a remedy in equity is warranted; and (4)
8    that the public interest would not be disserved by
9    a permanent injunction.

10   Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1137 n.
11   11 (9th Cir. 2006) (quoting eBay Inc. v. MercExchange
12   LLC, 126 S. Ct. 1837, 1840 (2006)).

13

14                    **III. DISCUSSION**

15   A. Plaintiff Hokto Kinoko's Motion for Summary
16   Judgment

17   Plaintiff Hokto Kinoko moves for summary judgment
18   on its claims against Defendant Concord for 1)
19   trademark infringement and 2) common law unfair
20   competition, and on all of Defendant Concord's
21   counterclaims and affirmative defenses.

22   However, Plaintiff Hokto Kinoko's Motion for
23   Summary Judgment currently before this Court relates
24   only to four out of the original ten federal
25   registrations pled in Plaintiff's First Amended
26   Complaint.  Accordingly, Plaintiff has informed the
27   Court that it seeks summary judgment on its trademark
28   infringement claim only with respect to the following

8

1 four federally registered trademarks:

2

| Registration No. 3210268 |  |
|---|---|
| Registration No. 3182866 |  |
| Registration No. 3179700 |  |
| Registration No. 3182867 |  |

18     Moreover, while Plaintiff also initially pled a

19 cause of action for false designation of origin in its

20 FAC, Plaintiff has not submitted briefing to the Court

21 on this claim in its summary judgment motion. As such,

22 the Court will not determine whether Plaintiff is

23 entitled to summary judgment on its claim for false

24 designation of origin.

25

26     1) Trademark Infringement

27     To sustain a claim for trademark infringement,

28 Hokto Kinoko must show (1) that it has valid trademark

rights; and (2) that Concord's sale of foreign packaged mushrooms is likely to confuse United States consumers. See Comedy III Prods., Inc. v. New Line Cinema, 200 F.3d 593, 594 (9th Cir. 2000).

The initial inquiry relates to whether Plaintiff Hokto Kinoko has valid trademark rights in the following trademarks at issue in this Motion, namely those shown in U.S. Trademark Registration Nos. 3210268, 3182866, 3179700, and 3182867. Under the Lanham Act, registration of a trademark creates a rebuttable presumption that the mark is valid, but the presumption evaporates as soon as evidence of invalidity is presented. 15 U.S.C. § 1051 et seq.

Here, Plaintiff maintains that in June 2010, for good and valuable consideration, Hokuto Japan assigned all rights and interests in the Hokto Marks to Plaintiff Hokto Kinoko. [See Shigeta Decl., ¶ 5, Ex. E.] In support of this assertion, Plaintiff has attached, to the Shigeta Declaration, Exhibit E, which is a copy of the Assignment recorded with the United States Patent and Trademark Office.[3]

Defendant Concord disputes this fact and alleges

---

[3] On July 27, 2011, Plaintiff Hokto Kinoko lodged amended trademark registrations, as granted by the USPTO on July 26, 2011, with regard to the following Hokto Marks: (3,210,268), (3,200,594), (3,185,840), (3,185,839), (3,185,838), (3,182,865), (3,182,866), (3,182,867), and (3,179,700) [135]. These amended trademark registrations list Plaintiff Hokto Kinoko as the owner of the registered marks.

that Plaintiff Hokto Kinoko has not provided any proof
of the consideration paid for the alleged assignment,
and therefore maintains that the alleged assignment may
be invalid. [UF No. 18 Def.'s Mot. for Summ. J.]
However, Plaintiff maintains that in consideration,
Hokuto Japan received the benefit of no longer "having
the burden and expense of policing the Marks...in the
United States." Moreover, Plaintiff asserts that
consideration received by Plaintiff Hokto Kinoko
included having control of the Marks,... protecting and
policing the Marks in the United States, and ensuring
the quality of goods sold under the Marks in the United
States." [Pl.'s UF No. 18.]

     Defendant Concord maintains that such purported
consideration is not legal consideration. However, the
Ninth Circuit instructs this Court to find otherwise.
See Kremen v. Cohen, 337 F.3d 1024, 1028 (9th Cir.
2003)(stating that consideration can be found when the
other party received some benefit they were not already
entitled to receive and finding that the adequacy of
consideration doesn't matter, and that consideration
must be "something of real value"). Additionally, the
Court finds that Defendant has not designated specific
facts to show that there is a genuine issue here with
regard to its claim of lack of consideration.

     Accordingly, the Court finds that Defendant Concord
has not met its burden in establishing that a triable
issue of fact remains with regard to whether Plaintiff

1   Hokto Kinoko has valid trademark rights in the
2   trademarks at issue in this Case. Defendant Concord has
3   not presented the Court with affirmative evidence to
4   establish that a genuine issue exists with regard to
5   the existence of consideration in relation to the
6   assignment of trademark rights from Third-Party
7   Defendant Hokuto Japan to Plaintiff Hokto Kinoko.
8   Therefore, the Court finds that Defendant has not
9   presented sufficient evidence regarding invalidity and
10  has therefore not successfully rebutted the presumption
11  that registration of a trademark supports the finding
12  of a valid mark. See 555-1212.com, Inc. v. Commc'n
13  House Intern., Inc., 157 F. Supp. 2d 1084 (N.D. Cal.
14  2001).

15      The Court must now determine if there are triable
16  issues of fact regarding whether Concord's sale of
17  foreign packaged mushrooms is likely to confuse United
18  States consumers. This issue is critical in determining
19  whether the Court should grant summary judgment on both
20  Plaintiff's claims for trademark infringement and
21  common law unfair competition.  The element of
22  likelihood of confusion applies to both claims.
23  Plaintiff Hokto Kinoko argues that there is a high
24  likelihood of confusion between Concord's sale of
25  Hokuto Japan's foreign packaged mushrooms and Hokto
26  Kinoko's U.S. locally grown mushrooms.

27      The core element of trademark infringement is the
28  likelihood of confusion, i.e., whether the similarity

12

of the marks is likely to confuse customers about the source of the products. E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1290 (9th Cir. 1992). The Ninth Circuit looks to the following factors for guidance in determining the likelihood of confusion: similarity of the conflicting designations; relatedness or proximity of the two companies' products or services; strength of the mark; marketing channels used; degree of care likely to be exercised by purchasers in selecting goods; defendant's intent in selecting its mark; evidence of actual confusion; and likelihood of expansion in product lines. See Dr. Seuss Enters. v. Penguin Books Kinoko, Inc., 109 F.3d 1394, 1404 (9th Cir. 1997).

Specifically, in the context of gray market goods, the likelihood of confusion relates to the existence of material differences between the allegedly infringing good and the registrant's product. See Grupo Gamesa S.A. De C.V. v. Dulceria El Molino, Inc., 39 U.S.P.Q. 2d 1531, 1533 (C.D. Cal. 1996). In general terms, a gray market good, often referred to as a parallel import, is "[a] foreign-manufactured good, bearing a valid United States trademark, that is imported without the consent of the United States trademark holder." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 285 (1988). "[T]he ultimate issue in a trademark infringement suit against the importer of gray market imports is the factual question of likelihood of confusion of U.S.

customers." Am. Circuit Breaker Corp. v. Or. Breakers, Inc., 406 F.3d 577, 584 (9th Cir. 2005). Liability for the importation of goods bearing an identical mark "turns on whether the allegedly infringing goods are genuine or 'differ materially' from the plaintiff's goods." Summit Tech. v. High-Line Med. Instruments Co., 922 F. Supp. 299, 308 (C.D. Cal. 1996). See PepsiCo, Inc. v. Reyes, 70 F. Supp. 2d 1057, 1059 (C.D. Cal. 1999)(finding that the sale of gray market products under the same trademarks as the authorized products is likely to confuse customers if these gray market products differ materially from the authorized products).

The inquiry of whether a product qualifies as a genuine product turns on the question of whether material differences exist between the allegedly infringing good and the registrant's product. Under the Lanham Act, imported goods are not "genuine" if they differed materially from the authorized version. See Monte Carlo Shirt, Inc. v. Daewoo Intern (America) Corp., 707 F.2d 1054, 1057 (9th Cir. 1983).

Therefore, the threshold inquiry in resolving whether summary judgment should be granted on Plaintiff's trademark infringement claim is whether the Defendant has met its burden to prove that there are no genuine issues of fact regarding the existence of material differences between Plaintiff Hokto Kinoko's U.S. produced and Japanese imported mushrooms and the

14

Japanese mushrooms imported by Defendant Concord.

As an initial matter, it is undisputed that both the Plaintiff Hokto Kinoko's U.S. produced mushrooms and the Hokuto Japan Japanese mushrooms imported by Concord are both sold under the same Hokto Marks. Defendant Concord argues that it cannot be held to infringe the Hokto Marks for importing the same genuine goods imported by Plaintiff Hokto Kinoko. However, Plaintiff Hokto Kinoko maintains that the goods imported by Defendant Concord are not considered genuine because there are material differences between those mushrooms and Hokto Kinoko's U.S. produced and Japanese imported mushrooms.

Defendant Concord relies on <u>Nec Electronics v. CAL Circuit Abco</u>, where the Ninth Circuit held that trademark law does not reach the sale of genuine goods bearing a true mark even though such sale is without the mark owner's consent. 810 F.2d 1506, 1510 (9th Cir. 1987). However, the Court finds that Defendant's reliance on <u>Nec Electronics</u> is misplaced because in that case, the parties stipulated that defendant's imported products were genuine products. See <u>id</u>. Such is not the case here. In fact, Defendant Concord has not met its burden to survive summary judgment on the issue of whether Defendant Concord's imported mushrooms qualify as genuine goods for purposes of trademark protection.

While Defendant Concord avers that it is undisputed

that its imported mushrooms are considered genuine products, Plaintiff Hokto Kinoko contends otherwise. Specifically, Plaintiff points to affirmative evidence, through the Declaration of Katsumi Shigeta, that the mushrooms imported from Hokuto Japan by Defendant Concord are not genuine goods because they materially differ from both Hokto Kinoko's U.S. produced mushrooms and the mushrooms it imports from Hokuto Japan. [Shigeta Decl., ¶ 3.] The mushrooms Plaintiff Hokto Kinoko imported from Japan for the U.S. market were grown under special conditions not normally used by Hokuto Japan. [Id.] Specifically, the growing media was changed to meet the United States Certified Organic standards. [Id.] Furthermore, Hokuto Japan and Plaintiff Hokto Kinoko developed special packaging for Plaintiff Hokto Kinoko's use in the U.S. market that used the English language, as compared to Hokuto Japan's normal Japanese language. [Id.]

     The Court finds that while Plaintiff Hokto Kinoko points to affirmative evidence with regard to the issue of genuine products, Defendant has not negated its burden to prove that there are triable issues of fact regarding whether the Defendant's imported mushrooms are considered genuine goods. As such, the issue of whether Defendant's imported mushrooms materially differ from both Plaintiff's domestically grown and Japanese imported mushrooms is also important for the Court to consider.

1    Material differences can relate to a product's

2   quality control standards, packaging, and price. See

3   Societe Des Produits Nestle, S.A. v. Casa Helvetia,

4   Inc., 982 F.2d 633, 641 (1st Cir. 1992)(enjoining gray

5   market chocolates that were not manufactured to the

6   same quality control standards and contained numerous

7   differences in composition, configuration, packaging,

8   and price).  Moreover, material differences can pertain

9   to including nutritional information on labeling and

10  packaging. See Ferrero U.S.A., Inc. v. Ozak Trading,

11  Inc., 753 F. Supp. 1240, 1244 (D.N.J. 1991)(finding

12  that unauthorized product differed materially because,

13  among other things, label did not contain information

14  concerning serving size, servings per container, and

15  nutrient and mineral composition). See also PepsiCo, 70

16  F. Supp. 2d at 1059 (finding use of Spanish versus

17  English a material difference); Nestle, 982 F.2d at 641

18  (finding use of Spanish and English on gray goods

19  versus Italian, French, and English on authorized goods

20  a material difference).

21    Different quality control standards also qualify as

22  material differences. Grupo Gamesa S.A., 39 U.S.P.Q. 2d

23  at 1553.  See also PepsiCo, 70 F. Supp. 2d at 1059

24  (finding material difference because gray goods did not

25  comply with FDA requirements). Lastly, different

26  marketing strategies and techniques have been evaluated

27  in determining whether material differences exist

28  between a registrant's product and the allegedly

17

infringing gray good. <u>PepsiCo</u>, 70 F. Supp. 2d at 1060.

Defendant Concord argues that its imported Hokuto Japan mushrooms are considered "genuine" or identical products to the Plaintiff Hokto Kinoko's imported mushrooms. As such, Defendant maintains that courts have held that the unauthorized sale of genuine goods does not constitute trademark infringement because it does not cause consumer confusion. <u>See, e.g.,</u> <u>NEC Elec.,</u> 810 F.2d at 1509.

By contrast, Plaintiff asserts that Hokuto Japan's Japanese produced mushrooms are only "genuine goods" in Japan, and Hokto Kinoko's products are "genuine goods" in the United States. Plaintiff maintains that Hokuto Japan's Japanese mushrooms are not "genuine goods" in the United States because there are material differences between the Hokuto Japan Japanese products and Hokto Kinoko's U.S. products. Plaintiff argues that the proper comparison is between Hokto Kinoko's genuine goods, whether domestically produced or imported and Concord's unauthorized imported goods.

The Court finds Plaintiff's arguments here persuasive. Plaintiff relies primarily on <u>Nestle</u> in furthering its argument about the existence of material differences between the imported mushrooms by Defendant Concord and Plaintiff's mushrooms manufactured in the United States.

In <u>Nestle</u>, the First Circuit found infringement because the Venezuelan manufactured chocolates differed

18

materially from the "Perugina" chocolates manufactured
in Italy and authorized for the U.S. market. 982 F.2d
at 641.  As the First Circuit held in <u>Nestle</u>, "when
dealing with the importation of gray goods, a reviewing
court must necessarily be concerned with subtle
differences, for it is by subtle differences that
consumers are most easily confused." <u>Id</u>.  Thus, in gray
goods cases, "the threshold of materiality is always
quite low." <u>Id</u>.

The Court finds the reasoning in <u>Nestle</u>
particularly instructive in determining that Plaintiff
has sufficiently presented to the Court that there are
no genuine issues of fact regarding whether there are
material differences between Hokto Kinoko's U.S.
produced and Japanese imported mushrooms and those
imported by Defendant Concord. On the other hand, the
Court finds that Defendant Concord has not met its
burden to show that triable issues of fact remain.

The Court finds that material differences in
growing conditions, labeling and packaging information,
warranty and customer support, and quality control
between packaged mushrooms sold by Defendant Concord
and the Hokto Kinoko U.S. produced and Japanese
imported mushrooms demonstrate that there is a high
likelihood of confusion regarding the nature and origin
of mushrooms bearing the Hokto Kinoko Marks.

With regard to material differences in growing
conditions, there is no genuine issue of fact that

19

Concord's imported mushrooms are grown under non-organic conditions. By contrast, Hokto Kinoko's U.S. produced and imported mushrooms are grown under conditions that are approved as meeting the Organic Certifier's standards.

Furthermore, the labeling and packaging information between the Hokto Kinoko and Hokuto Japan products have language and design differences.  The authorized domestic packaging, states that mushrooms are "100% Organic," "USDA Organic" and "Certified Organic by GOCA," while the imported product has no claim to being Organic or Certified Organic. [Shigeta Decl., ¶ 13, Ex. G.] Moreover, the domestic product contains the familiar nutrition information such as serving size, servings per container, calorie content in English along with vitamin and mineral content. [Shigeta Decl.,¶ 15, Ex. H.] Concord's imported Hokuto Japan products do not contain such information. [Shigeta Decl., ¶ 13, Ex. G.]

Additionally, the packaging of Defendant Concord's imported mushrooms specifies weights based on the metric system (which is used in Japan): provides hours of customer support based on the Japanese time zone using a 24-hour notation ("13:00-17:00"); includes information uniquely designed for the Japanese market (including the website address for the Japanese parent company (http: //www.hokto-Kinoko.co.jp), and provides a Japanese telephone number "TEL. 026-254-5333."

1   [Shigeta Decl., ¶ 13, Ex. G.] The Hokto Kinoko goods,

2   on the other hand, indicate they are "produced and

3   packed by Hokto Kinoko Company, San Marcos,

4   California," and that it is a "Product of the U.S.A."

5   Weights are in English metric units, e.g., 3.5 ounces

6   (100 grams). [Shigeta Decl., ¶ 15, Ex. H.]

7        With regard to the issue of mushrooms imported by

8   Hokto Kinoko from Hokuto Japan, the mushrooms imported

9   by Hokto Kinoko for the U.S. market were grown under

10  special conditions not normally used by Hokuto Japan.

11  [Shigeta Decl., ¶ 3.] Plaintiff avers that the growing

12  media was changed to meet the United States Organic

13  standards. [Id.] Defendant disputes this by arguing

14  that Hokto Kinoko is referring to its American-grown

15  product here and not the product it imports from its

16  parent company, Hokuto Japan. However, the Court finds

17  that Defendant offers no credible evidence in support

18  of this contention. Rather, Defendant cites to the

19  deposition transcript of Kazumi Ikeda, Vice President

20  of Production at Hotko Kinoko, which does not affirm

21  that Hokto Kinoko imports the same mushrooms as

22  Defendant Concord. Instead, the testimony indicates

23  that the mushrooms imported by Hokto Kinoko from Hokuto

24  Japan were organic products specifically grown for the

25  U.S. market and not the same products imported by

26  Defendant Concord. [Posey Decl., ¶ 3, Ex. B, Ikeda

27  Dep. 72: 4-9.]

28       Furthermore, Plaintiff asserts that Hokuto Japan

and Hokto Kinoko developed special packaging for Hokto
Kinoko's use in the U.S. market that used the English
language, as compared to Hokuto Japan's normal Japanese
language. [Shigeta Decl., ¶ 3.] The English language
packaging identified the product as "Certified Organic
by QAI" and provided Nutrition Facts. [Id.]

Additionally, Hokuto Japan provides customer
support information on its packaging uniquely designed
for the Japanese market while Hokto Kinoko lists a
California-based website as its contact information.
Hokto Kinoko packages list a California-based website
from which contact information, e.g. address, telephone
and facsimile numbers and email address for comments
and questions and suggestions, are readily available.
[Shigeta Decl., ¶ 15, Ex. H.]

Moreover, there are substantial differences in the
quality control exercised over Hokto Kinoko and
Concord's mushrooms. For example, Hokto Kinoko
maintains strict temperature settings and controls
temperature both within their San Marcos facility and
during transportation and storage of the mushrooms.
However, Plaintiff maintains that Concord testified
that shipping companies can use their own temperature
settings without any specific setting provided by
Concord when transporting goods.

Accordingly, the Court finds that Plaintiff has put
forth affirmative evidence to show that there are
material differences between Hokto Kinoko's U.S.

produced mushrooms and Defendant Concord's mushrooms.
Furthermore, Plaintiff has put forth evidence to show
that there are material differences between the
mushrooms it imports from Hokuto Japan and Defendant's
imported mushrooms from Japan.

With respect to the differences between Hokto
Kinoko's Japanese imported mushrooms and Defendant
Concord's Japanese imported mushrooms, Plaintiff has
also met its burden to show that there are no genuine
issues of material fact on the existence of material
differences between these products. Specifically,
Plaintiff Hokto Kinoko offers affirmative evidence to
prove material differences with respect to growing
conditions, labeling and packaging info, and quality
control.

Accordingly, the Court finds that the Defendant has
not met its burden of showing that genuine issues of
material fact remain as to whether Hokto Kinoko
mushrooms imported from Hokuto Japan materially differ
from those imported by Defendant with respect to
quality control.  The Court finds that the evidence put
forth by Defendant Concord is not sufficient to sustain
its burden under summary judgment.

Moreover, while there is no mechanical way to
determine the point at which a difference becomes
"material," the threshold of materiality is always
quite low in gray goods cases. <u>See</u> <u>Lever Bros.</u>, 877
F.2d at 103, 108 (finding minor differences in

ingredients and packaging between versions of deodorant
soap to be material); <u>Ferrero</u>, 753 F. Supp. at 1241–49,
1247 (finding a one-half calorie difference in chemical
composition of breath mints, coupled with slight
differences in packaging and labeling, to be material);
<u>PepsiCo Inc. v. Nostalgia</u>, 18 U.S.P.Q.2d at 1405
(finding "differences in labeling, packaging and
marketing methods" to be material); <u>PepsiCo v. Giraud</u>,
7 U.S.P.Q.2d at 1373 (finding differences not readily
apparent to the consumer—container volume, packaging,
quality control, and advertising participation—to be
material); <u>Dial Corp.</u>, 643 F. Supp. at 952 (finding
differences in formulation and packaging of soap
products to be material).

   Here, Plaintiff Hokto Kinoko has pointed to
material differences in growing conditions, labeling
and packaging info, warranty and customer support, and
quality control. The Court finds that such differences
in conjunction with identical Hokto Marks appearing on
Hokto Kinoko's U.S. produced mushrooms, their Japanese
imported mushrooms, and Defendant's Japanese imported
mushrooms from Hokuto Japan, creates a distinct
potential for consumer confusion. <u>See</u> <u>Ferrer</u>, 753 F.
Supp. at 1297.  <u>See</u> <u>also</u> <u>Nestle</u>, 982 F.2d at 641
(finding that the existence of any difference between
the registrant's product and the allegedly infringing
gray good that consumers would likely consider to be
relevant when purchasing a product creates a

1 presumption of consumer confusion sufficient to support
2 a Lanham Trademark Act claim).

3      Accordingly, the Court finds that there are no
4 genuine issues of fact on whether there are material
5 differences between Defendant Concord's imported
6 Japanese mushrooms, Plaintiff Hokto Kinoko's U.S.
7 produced mushrooms, as well as the Hokuto Japan
8 mushrooms imported by Plaintiff Hokto Kinoko.
9 Defendant has failed to point to specific facts and has
10 instead made a series of conclusory allegations, which
11 are insufficient in defeating summary judgment. <u>See</u>
12 <u>Hansen,</u> 7 F.3d at 138 (finding that conclusory
13 allegations unsupported by factual allegations are
14 insufficient to create a triable issue of fact so as to
15 preclude summary judgment).

16      Defendant's argument that it is importing a genuine
17 good lacks merit. A product of Hokuto Japan may be a
18 "genuine product" in Japan, but it is not necessarily a
19 genuine product in the U.S. To be a genuine product in
20 the U.S., it must be identical to authorized products
21 sold in the U.S. and not contain material differences
22 with the authorized product.  <u>See</u> <u>Monte Carlo Shirt,</u>
23 <u>Inc.,</u> 707 F.2d at 1057.

24      Moreover, as previously discussed, it is a finding
25 of material differences between the gray market imports
26 and the authorized imports that can create a likelihood
27 of confusion. <u>See</u> <u>Nestle</u>, 982 F.2d at 641. <u>See</u> <u>also</u>
28 <u>PepsiCo, Inc. v. Torres</u>, 27 U.S.P.Q. 2d 1948, 1950

1  (C.D. Cal. 1993) (holding that United States courts

2  have repeatedly found that the unauthorized importation

3  into the United States of goods legitimately

4  manufactured abroad under a mark used in the United

5  States is likely to result in confusion where there are

6  material differences between the domestic and foreign

7  goods).

8       Furthermore, although disfavored in trademark

9  infringement cases, summary judgment may be entered

10 when no genuine issue of material fact exists. See

11 Surfvivor Media, Inc. v. Survivor Productions, 406

12 F.23d 625 (9th Cir. 2005). The Ninth Circuit has held

13 that likelihood of confusion in a trademark

14 infringement suit against the importer of gray market

15 imports is a question of fact that is routinely

16 submitted for jury determination. Levi Strauss & Co. v.

17 Blue Bell, Inc., 778 F.2d 1352, 1356 n. 5 (9th Cir.

18 1985); Interstellar Starship Servs., Ltd. v. Epix, Inc,

19 184 F.3d 1107, 1109 (9th Cir. 1999). However, whether

20 likelihood of confusion is more a question of law or

21 one of fact can depend on the circumstances of each

22 particular case. Alpha Industries, Inc. v. Alpha Steel

23 Tube & Shapes, Inc., 616 F.2d 440, 443 (9th Cir. 1980).

24 And, a question of fact may be resolved as a matter of

25 law if reasonable minds cannot differ and the evidence

26 permits only one conclusion. See Sanders v. Parker

27 Drilling Co., 911 F.2d 191, 194 (9th Cir. 1990).

28      The Ninth Circuit has identified eight factors to

determine whether there is a likelihood of confusion:
(1) the similarity of the mark(s), (2) the strength of
the mark(s), (3) evidence of actual confusion, (4) the
proximity or relatedness of the goods, (5) the degree
to which the marketing channels used for the goods
converge, (6) the type of goods and the degree of care
likely to be exercised by the purchasers, (7) the
defendant's intent in selecting the mark, and (8) the
likelihood of expansion of the product lines. <u>AMF, Inc.
v. Sleekcraft Boats</u>, 599 F.2d 341 (9th Cir. 1979).
The test is a pliant one—some factors are more
important than others, and the factors need not be
mechanically added up in order to find a likelihood of
confusion. <u>Dreamwerks Production Group, Inc. v. SKG
Studio</u>, 142 F.3d 1127, 1129 (9th Cir. 1998).

    The legal conclusion that confusion is likely must
rest on the particular facts of the case, but when all
of the material facts have been determined, the
ultimate determination of likelihood of confusion lies
within the exclusive jurisdiction of the court. <u>See
Alpha Industries, Inc. v. Alpha Steel Tube & Shapes,
Inc.</u>, 616 F.2d 440, 443-44 (9th Cir. 1980).
Plaintiff Hokto Kinoko successfully advances a series
of arguments with regard to likelihood of confusion.
First, with respect to the similarity of the mark,
there is no dispute that the Hokto Marks used on the
packaging for Hokto Kinoko's U.S. produced and Japanese
imported mushrooms and the Hokuto Japan mushrooms

imported to the U.S. by Defendant Concord are the same.
There is no genuine issue of fact regarding the
similarity of the marks.

Second, the strength of the Hokto Marks also weigh
in favor of a finding of likelihood of confusion.  The
purpose of examining the strength of the plaintiff's
mark is to determine the scope of trademark protection
to which the mark is entitled. <u>See</u> <u>Entrepreneur Media,</u>
<u>Inc. v. Smith</u>, 279 F.3d 1135, 1141 (9th Cir. 2002). The
more unique the mark, the greater the degree of
protection. <u>See</u> <u>id.</u>

The Marks at issue here include a series of
mushroom character marks as well as the name "Hokto."
"Fanciful" marks consist of "coined phrases" that also
have no commonly known connection with the product at
hand. <u>See</u> <u>Dreamwerks</u>, 142 F.3d at 1130 n. 7. A mark is
"strong" if it is memorable and if the public would
likely associate it with the mark's owner. <u>Brookfield</u>
<u>Comm., Inc. v. West Coast Entm't Corp.</u>, 174 F.3d 1036,
1058 (9th Cir. 1999). Analysis of this prong serves to
determine the scope of trademark protection to which
the mark is entitled; more unique marks are entitled to
greater protection. <u>Surfvivor</u>, 406 F.3d at 631. Marks
that have no commonly known connection with the
product, whether the marks consist of common words or
coined phrases, are considered the strongest marks. <u>See</u>
<u>id.</u> at 631-32.

In this case, the Court finds that Hokto is a

unique term that is entitled to more protection than if the term was merely generic or descriptive. Moreover, the mushroom like characters are significantly distinct. Accordingly, the Court finds the strength of the marks at issue here also favors a finding of likelihood of confusion.

Third, with regard to the issue of actual confusion, the Ninth Circuit has recognized that evidence of actual confusion is not required to establish likelihood of confusion. See American Intern. Group, Inc. v. American Intern. Bank, 926 F.2d 829 (9th Cir. 1991). While there is no evidence of actual confusion in the record here, the Court finds that the lack of evidence of actual confusion is not a material fact. See Network Automation, Inc. v. Advanced Systems Concepts, Inc., 638 F.3d 1137, 1145 (9th Cir. 2011)(recognizing that the [likelihood of confusion] factors are intended as an adaptable proxy for consumer confusion, not a rote checklist).

Fourth, the proximity or relatedness of the goods also favors a finding of likelihood of confusion. Goods are proximate if they are "similar in use and function" and "would be reasonably thought by the buying public to come from the same source if sold under the same mark." Sleekcraft, 599 F.2d at 348, 350. Both Plaintiff Hokto Kinoko and Defendant Concord sell mushrooms. It is undeniable that the products have the same uses and functions.

1        Fifth, the Court must next consider "whether the
2  predominant purchasers of the parties' goods are
3  similar or different, and whether the parties'
4  marketing approaches resemble one another." <u>Aurora</u>
5  <u>World, Inc. v. Ty, Inc.</u>, 719 F. Supp. 2d 1115, 1162
6  (citing <u>Grey v. Meijer, Inc.</u>, 295 F.3d 641 (6th Cir.
7  2002)). The greater the degree of overlap, the more
8  likely there is to be confusion. <u>Sleekcraft</u>, 599 F.2d
9  at 353.

10       Here, Hokto Kinoko and Defendant Concord are in
11 direct competition. Both parties have submitted
12 evidence that they directly market their mushrooms to
13 grocery stores. [Shigeta Decl., ¶ 16; Posey Decl., ¶
14 16, Ex. P]. As such, the Court finds that this factor
15 also favors a finding of likelihood of confusion.

16       Sixth, the Court need consider the type of goods
17 and the degree of care likely to be exercised by the
18 purchasers. Likelihood of confusion is determined on
19 the basis of a "reasonably prudent consumer," so courts
20 have expected consumers "to be more discerning—and less
21 easily confused—when [they are] purchasing expensive
22 items." <u>Brookfield</u>, 174 F.3d at 1060. "On the other
23 hand, when dealing with inexpensive products, customers
24 are likely to exercise less care, thus making confusion
25 more likely." <u>Id</u>.

26       Mushrooms are considered a low-cost consumer good,
27 purchased at a grocery store.  A reasonably prudent
28 consumer may not carefully inspect the back label of a

package of mushrooms to ascertain who produced it.
Therefore, with respect to the purchase of mushrooms,
the consumer is likely to exercise very little care.
As such, the Court finds that the "degree of consumer
care" factor favors Plaintiff Hokto Kinoko here and a
finding of likelihood of confusion.

Seventh, the defendant's intent in selecting the
mark must also be evaluated in determining the
likelihood of confusion. Knowing adoption of a mark
that is closely similar to one that is used by another
is a basis for inferring intent to deceive the public,
which is "strong evidence of a likelihood of
confusion." See Official Airline Guides, Inc. v. Goss,
6 F.3d 1385, 1394 (9th Cir. 1993). Here, the fact that
the mushroom packages carry the same Hokto Marks
permits an inference of intent. See K-Swiss, Inc., 291
F. Supp. 2d at 1124.

With regard to evidence of Defendant's intent,
Plaintiff Hokto Kinoko points to the deposition
testimony of David Tung, Concord's President. Plaintiff
specifically references Mr. Tung's testimony that
"compared to other suppliers of maitake mushrooms, the
quality of the Hokto brand is better." [Orme Decl., Ex.
TT, D. Tung. Dep.  51:4-7.] Overall, Defendant has not
submitted any evidence to the Court to negate the
inference that its intent in selecting the Hokuto Japan
mushroom products to import and sell was to trade off
the reputation of the Hokto brand. Therefore, while the

31

Court finds that it is not one of the strongest factors in support of a likelihood of confusion finding, it nonetheless weighs in favor of finding likelihood of confusion.

Lastly, the Court considers the likelihood of expansion of the product lines. A strong possibility that either party will expand its business to compete with the other weighs in favor of finding infringement. Sleekcraft, 599 F.2d at 354. However, where, as here, the parties already compete to a significant degree because they sell related products and use similar marketing channels, the Court finds that this factor is relatively unimportant to the likelihood of confusion analysis. See Brookfield Comm., Inc., 174 F.3d at 1055. Neither party has submitted evidence of planned expansion, and Plaintiff Hokto Kinoko does not allege that Concord's presence is hindering its expansion plans.

Based on the foregoing, Defendant Concord has not put forth affirmative evidence to prove the existence of genuine issues with regard to both whether Hokuto Japan's Japanese mushrooms imported by Defendant Concord are "genuine goods" in the United States and whether there are material differences between Plaintiff Hokto Kinoko's U.S. produced and Japanese imported mushrooms and the Japanese mushrooms imported by Defendant Concord.

Furthermore, a thorough review of the likelihood of

32

confusion factors confirms that Defendant has not met

it burden to set forth facts showing that genuine

issues of disputed fact remain with regard to a finding

of likelihood of confusion. <u>See</u> <u>PepsiCo, Inc.</u>, 27

U.S.P.Q. 2d at 1950. In fact, the Court finds that the

relevant factors support a finding of likelihood of

confusion as a matter of law. Accordingly, the Court

**GRANTS** Plaintiff's Motion for Summary Judgment on its

claim for trademark infringement.

### 2) Unfair Competition

Whether Concord's sale of foreign packaged

mushrooms is likely to confuse United States consumers

is also critical in determining whether the Court

should grant summary judgment on Plaintiff's claim for

common law unfair competition.  The element of

likelihood of confusion also applies to this claim.

Moreover, the courts have uniformly held that

common law and statutory trademark infringement are

merely specific aspects of unfair competition. <u>New West</u>

<u>Corp. v. NYM Co. of California, Inc.</u>, 595 F.2d 1194,

1201 (9th Cir. 1979).  Under the Lanham Act, the

ultimate test is whether the public is likely to be

deceived or confused by the similarity of the marks.

<u>Smith v. Chanel, Inc.</u>, 402 F.2d 562, 563 (9th Cir.

1968). "Whether we call the violation infringement,

unfair competition or false designation of origin, the

test is identical- is there a 'likelihood of

1  confusion?'" <u>New West Corp.,</u> 595 F.2d at 1201.

2      The decisive test of common law unfair competition

3  is whether the public is likely to be deceived about

4  the source of goods or services by the defendant's

5  conduct. <u>Academy of Motion Picture Arts and Sciences v.</u>

6  <u>Benson</u>, 15 Cal. 2d 685, 690 (1940); <u>South Bay Chevrolet</u>

7  <u>v. General Motors Acceptance Corp.</u>, 72 Cal. App. 4th

8  861, 865 (4th Dist. 1999). The likelihood of public

9  confusion, although innocently created, will warrant

10  injunctive relief against unfair competition. <u>Tomlin v.</u>

11  <u>Walt Disney Prods.</u>, 18 Cal. App. 3d 226, 231 (2d Dist.

12  1971).

13      The Court finds that Defendant has not put forth

14  affirmative evidence to establish that there are

15  triable issues of fact regarding whether Defendant

16  Concord's sale of Japanese imported mushrooms that bear

17  the registered Hokto Marks is likely to confuse United

18  States consumers, who expect mushroom products bearing

19  these marks to be the same as the products normally

20  sold in the United States by Hokto Kinoko.

21      As courts have uniformly held that common law and

22  statutory trademark infringement are merely specific

23  aspects of unfair competition, a finding of likelihood

24  of confusion under Plaintiff's trademark infringement

25  claim also supports a finding of likelihood of

26  confusion under Plaintiff's common law unfair

27  competition claim.  Accordingly, the Court **GRANTS**

28  Plaintiff Hokto Kinoko's Motion for Summary Judgment on

1   its claim for common law unfair competition.

2           3) Permanent Injunction

3       Plaintiff requests that the Court enter a permanent

4   injunction to preclude further infringing activity, in

5   the event that the Court grant summary judgment in

6   Plaintiff's favor on its claims for trademark

7   infringement and unfair competition.

8       The Supreme Court noted in eBay Inc. v.

9   MercExchange LLC, 126 S. Ct. 1837, 1840 (2006), that to

10  be entitled to a permanent injunction, a plaintiff must

11  show:

12      (1) that it has suffered an irreparable injury;

13      (2) that remedies available at law, such as

14      monetary damages, are inadequate to compensate for

15      that injury;

16      (3) that, considering the balance of hardships

17      between the plaintiff and defendant, a remedy in

18      equity is warranted; and

19      (4) that the public interest would not be disserved

20      by a permanent injunction.

21  Reno Air Racing Ass'n v. McCord, 452 F.3d 1126, 1137 n.

22  11 (9th Cir. 2006) (quoting eBay, Inc. v. MercExchange

23  LLC, 126 S. Ct. 1837, 1840 (2006)).

24      In trademark infringement or unfair competition

25  actions, once the plaintiff establishes a likelihood of

26  confusion, it is ordinarily presumed that the plaintiff

27  will suffer irreparable harm if injunctive relief is

28  not granted. Vision Sports, Inc. v. Melville Corp., 888

1   F.2d 609, 612 n. 3 (9th Cir. 1989).

2       Hokto Kinoko argues that a permanent injunction is

3   warranted because Concord's alleged infringing activity

4   is currently ongoing which cannot be adequately

5   compensated by monetary damages.  Moreover, Concord

6   argues that the balance of hardships weigh in favor of

7   Hokto Kinoko, as Concord is free to purchase Hokto

8   Kinoko's mushrooms from one of Hokto Kinoko's

9   distributors. The only hardship to Concord is that it

10  will likely cost more to buy the authorized Hokto

11  Kinoko products versus the unauthorized and unlawful

12  imported mushrooms from Japan. Additionally, Plaintiff

13  avers that there is a great public interest in avoiding

14  confusion by protecting trademark owners against the

15  sale of infringing goods.

16      In Opposition, Defendant Concord argues that

17  Plaintiff's request for a permanent injunction is

18  overbroad. Defendant Concord argues that any injunction

19  preventing Concord from selling genuine goods in the

20  United States would violate first sale and exhaustion

21  doctrines and is likely to be unconstitutional as a

22  restraint on fair trade.

23      However, contrary to Concord's assertions, the

24  Court finds that the proposed permanent injunction is

25  limited to gray market goods imported by Defendant

26  Concord and is therefore not overbroad. There are no

27  restrictions placed on Defendant Concord, should

28  Concord intend to import genuine goods.

1    Moreover, the Court finds that Plaintiff Hokto
2 Kinoko has suffered an irreparable injury.  As such,
3 the Court **GRANTS** summary judgment in Plaintiff's favor
4 on its claims for trademark infringement and unfair
5 competition.  Once infringement is shown, irreparable
6 injury is generally presumed in a trademark case.  <u>See</u>
7 <u>Abercrombie & Fitch Co. v. Moose Creek, Inc.</u>, 486 F.3d
8 629, 633 (9th Cir. 2007).

9    Furthermore, the Court finds that the remedy at law
10 here is inadequate.  Although damages will remedy
11 Concord's past acts, it will not remedy Concord's
12 future acts.  Additionally, the Court finds that the
13 balance of hardships favors Plaintiff Hokto Kinoko.  If
14 the injunction does not issue, Defendant Concord would
15 be more likely to continue violating Hokto Kinoko's
16 rights, imposing a hardship on Plaintiff Hokto Kinoko.
17 On the other hand, an injunction would impose little
18 hardship on Concord because Concord is free to purchase
19 Hokto Kinoko's mushrooms from one of Hokto Kinoko's
20 distributors.  The only hardship to Concord is that it
21 will likely cost more to buy the authorized Hokto
22 Kinoko products versus the unauthorized and unlawful
23 imported mushrooms from Japan.  The Court finds that
24 this is simply not enough to tip the balance of
25 hardship in Defendant Concord's favor.

26    Finally, the Court finds that the public interest
27 would not be disserved by the issuance of the permanent
28 injunction.  Rather, preventing Concord from importing

Japanese produced mushrooms with the Hokto Marks meant for sale only in Japan can benefit the public by preventing likelihood of confusion to consumers. In conclusion, the Court finds that the four factor test is sufficiently satisfied, and the Court **GRANTS** the permanent injunction. Specifically, the Court adopts the injunction language proposed by Plaintiff Hokto and will issue a separate order with regard to the permanent injunction.

B. Third-Party Defendant Hokuto Japan's Motion for Summary Judgment

   Third-Party Defendant Hokuto Japan seeks summary judgment as to Third-Party Plaintiff Concord's claims for 1) Declaration of Cancellation of the Asserted Trademarks, 2) Declaration of License, 3) Declaration of Laches, 4) Declaration of Non-Infringement, and 5) Unfair Competition.

**1) Declaration of Cancellation of the Asserted Trademarks**

As a preliminary matter, Hokuto Japan argues that there is no present case or controversy with respect to the cancellation of the Hokto Marks between Concord and Hokuto Japan because Hokuto Japan is not the owner of the federal registrations at issue. Hokto Kinoko is the

owner of the Hokto Marks[4] by assignment from Hokuto Japan on June 28, 2010. [See Shigeta Decl., ¶ 5, Ex. E.] In June 2010, for good and valuable consideration, Hokuto Japan assigned all rights and interests in the Hokto Marks to Plaintiff Hokto Kinoko. [See id.] This assignment also included the right to sue for past damages. See H & J Foods, Inc. v. Reeder, 477 F.2d 1053, 1056 (9th Cir. 1973)(finding that a trademark owner may specifically assign all interests in the mark, including the right to sue for past infringement).

Defendant Concord disputes this fact and alleges that Plaintiff Hokto Kinoko has not provided any proof of the consideration paid for the alleged assignment, and therefore maintains that the alleged assignment may be invalid. However, as previously discussed, prevailing Ninth Circuit case law instructs this Court to find that there was proper legal consideration to make the assignment valid as Hokuto Japan did receive some benefit. See Kremen, 337 F.3d at 1028.

In order to bring a claim for trademark cancellation, the cancellation petitioner must plead and prove facts showing a "real interest" in the proceedings in order to establish standing. Rosso and

---

[4] The Hokto Marks at issue in Hokuto Japan's Motion for Summary Judgment refer to the following trademark registrations: (3,210,268),(3,179,700),(3,182,866), and (3,182,867).

1  <u>Mastracco, Inc. v. Giant Food, Inc.</u>, 720 F.2d 1263,

2  1265 (Fed. Cir. 1983). A cancellation petitioner must

3  show that he is "more than an intermeddler" but rather

4  has a personal interest, and that "there is a real

5  controversy between the parties. <u>Star-Kist Foods, Inc.</u>

6  <u>v. P.J. Rhodes & Co.</u>, 735 F.2d 346, 349 (9th Cir.

7  1984).

8      Additionally, a complaint for trademark

9  cancellation in federal court must proceed against the

10 party who currently owns the trademark, rather than an

11 exclusive licensee authorized to use the trademark. <u>See</u>

12 <u>Informix Software, Inc. v. Oracle Corp.</u>, 927 F. Supp.

13 1283, 1286 (N.D. Cal. 1996).

14     The Court finds that there is no present case or

15 controversy with respect to the cancellation of the

16 Hokto Marks between Concord and Hokuto Japan. The

17 assignment made by Hokuto Japan to Hokto Kinoko

18 contained legal consideration sufficient to make the

19 assignment valid. With a valid assignment, there is no

20 genuine issue of fact with regard to Hokuto Japan not

21 being the current owner of the federal registrations at

22 issue here. Finding the District Court for the Northern

23 District of California's decision in <u>Informix Software</u>

24 particularly instructive, the Court finds that

25 Defendant Concord's declaratory relief claim for

26 trademark cancellation should proceed against Hokto

27 Kinoko, the party who currently owns the trademarks at

28 issue. Therefore, the Court **GRANTS** summary judgment in

1  favor of Hokuto Japan as to Defendant's third-party

2  claim for Declaration of Cancellation of Asserted

3  Trademarks against Hokuto Japan.

4

5              **2) Declaration of License**

6      In order to grant a trademark license, the licensor

7  must maintain sufficient control over the licensee.

8  That control is necessary to meet the public

9  expectations of quality and source of the goods. <u>See</u>

10 <u>Miller v. Glen Miller Prods., Inc.</u>, 318 F. Supp. 2d

11 923, 937 (C.D. Cal. 2004) ("a trademark owner has an

12 affirmative duty to supervise and control the

13 licensee's use of its mark, in order to protect the

14 public's expectation that all products sold under a

15 particular mark derive from a common source and are of

16 like quality"). Moreover, a "licensee of a

17 trademark...may not sublicense those rights to third

18 parties without express permission from the original

19 licensor." <u>Miller v. Glen Miller Prods., Inc.</u>, 454 F.3d

20 975, 978 (9th Cir. 2006).

21     Hokuto Japan maintains that Concord was never

22 granted an express or implied license to use the Hokto

23 Marks. However, Concord relies upon an agreement

24 between Hokuto Japan and Maruichi regarding sales of

25 Hokuto Japan's products to Maruichi in Japan ("Japanese

26 Agreement") as a way to justify its claim that a

27 license exists.

28     The Court finds that Defendant Concord has not met

its burden to establish a genuine issue of material fact as to whether or not it acquired an implied or express license to use the Hokto Marks. Concord bases its claim to possess an implied or express license on the following allegations: 1) MRT is a company of Maruichi Produce, Inc., 2) the Japanese agreement requires reporting of all sales to Hokuto Japan, 3) MRT is an authorized supplier of Hokuto Japan, 4) Hokuto Japan ... specifically controls the sales of Maruichi Produce, Inc., and 5) MRT had express permission to export Hokuto Japan's Hokto branded mushrooms.

However, the Court finds that Defendant Concord has offered no evidence that MRT is affiliated with Maruichi and that MRT is an authorized supplier of Hokuto Japan. Rather, Defendant's purported support for this assertion is nothing more than invoices and packing lists that make no mention about MRT being an authorized distributor for Hokuto Japan or that MRT is a subsidiary of Maruichi Produce, Inc. [Posey Decl., ¶ 11, Ex. K at 56-61.] Furthermore, while Concord alleges that Hokuto Japan ... specifically controls the sales of Maruichi Produce, Inc., it does not cite to affirmative evidence in support of this conclusion. The only evidence of the relationship between Maruichi and MRT is that Maruichi may have some unknown ownership interest in MRT. [Orme Decl., ¶ 30, Ex. DD.] The Court finds that this ownership interest does not equate to an agreement between Hokuto Japan and MRT as Defendant

42

Concord claims. Instead, the Japanese agreement is only between Hokuto Japan and Maruichi.

Under Concord's express license theory, Hokuto Japan granted an express license to Maruichi who granted an express license to MRT who granted an express license to Concord. Concord, however, has not produced any evidence of an express license.  Rather, what Concord has produced is the Japanese agreement between Hokuto Japan and Maruichi that is not an express license for the export of Hokuto Japan products bearing the Marks. [Orme Decl., ¶ 31, Ex. EE (CF00001-4).]

Moreover, the Court finds that even if the Japanese agreement did grant an express license to Maruichi to sublicense the Marks to either Concord or MRT, which it did not, Concord could not possess an implied license to import the gray market goods.  See Miller, 454 F.3d at 978 (finding that "a licensee of trademark... rights may not sublicense those rights to third parties without express permission from the original licensor").

The Court finds that there is no evidence of any express permission given by Hokuto Japan to Maruichi to sublicense the Hokto Marks to either Concord or MRT. As such, the Court finds that Defendant Concord has not met its burden to defeat summary judgment on its claim that it had an express or implied license under the Hokto Marks.  Accordingly, the Court **GRANTS** summary

judgment in favor of Third-Party Defendant Hokuto Japan
on the Declaration of License third-party claim.

### 3) Declaration of Laches

Laches requires a showing that "(1) [the] delay in
filing suit was unreasonable, and (2) [that party]
would suffer prejudice caused by the delay if the suit
were to continue." <u>Jarrow Formulas, Inc. v. Nutrition
Now, Inc.</u>, 304 F.3d 829, 838 (9th Cir. 2002). A party
asserting laches must show that it suffered prejudice
as a result of the plaintiff's unreasonable delay in
filing suit. <u>Id</u>.  The limitations period for laches
starts "from the time the plaintiff knew or should have
known about its potential cause of action." <u>Tillamook
Cntry. Smoker, Inc. v. Tillamook Cnty. Creamery Assoc.</u>,
465 F.3d 1102 (9th Cir. 2006).

The Court finds that Defendant Concord has not met
its burden to establish a genuine issue of material
fact as to whether Hokto Kinoko and Hokuto Japan acted
diligently in asserting their rights under the Lanham
Act and California unfair competition law. Defendant
does not cite facts to support its claim for laches.
Rather, Defendant relies on attorney argument to assert
that Hokto Kinoko's trademark infringement and unfair
competition claims are barred by laches. Defendant
merely avers that Hokto Kinoko delayed in filing suit
and both Hokto Kinoko and Hokuto Japan unreasonably
waited to assert any claims against Defendant Concord.

However, the Court finds that such conclusory
statements do not create any genuine issues of material
fact. See Hansen, 7 F.3d at 138.

Defendant has not pointed to any facts to suggest
that Hokuto Japan or Hokto Kinoko knew or could have
learned of Concord's importation of the gray market
goods before November 2008. Hokuto Japan and Hokto
Kinoko maintain that they first discovered the gray
market goods in November 2008. This lawsuit was filed
in February 2010. The Court finds that this fifteen
month time frame does not constitute an unreasonable
delay for purposes of establishing a laches defense.

Equally fatal is that Defendant Concord has failed
to point to specific facts to show that it has suffered
prejudice as a result of the alleged unreasonable
delay. Proof of prejudice is an element of a claim for
laches. See Jarrow Formulas, Inc., 304 F.3d at 838.
Plaintiff has failed to provide the Court with any
factual support on this element. Accordingly, the Court
**GRANTS** summary judgment in favor of Hokuto Japan on
Concord's claim for declaration of laches.


### 4) Declaration of Non-Infringement

The Lanham Act specifically allows for assignment
of rights in registered trademarks.


(a)(1) A registered mark or a mark for which an
application to register has been filed shall be

45

1   assignable with the goodwill of the business in

2   which the mark is used, or with that part of the

3   goodwill of the business connected with the use of

4   and symbolized by the mark.

5

6   (3) Assignments shall be by instruments in writing

7   duly executed. Acknowledgment shall be prima facie

8   evidence of the execution of an assignment, and

9   when the prescribed information reporting the

10   assignment is recorded in the United States Patent

11   and Trademark Office, the record shall be prima

12   facie evidence of execution.

13   15 U.S.C. § 1060.

14   Hokuto Japan assigned its entire interest and

15   goodwill for use of the Hokto Marks in the U.S. to

16   Hokto Kinoko. [Shigeta Decl., ¶ 5, Ex. E.] Included in

17   that assignment is "the right to file suit for past and

18   future damages resulting from infringement of said

19   marks." (Id.) The USPTO received notice of the

20   assignment on July 12, 2010. (Orme Decl., ¶ 36, Ex.

21   JJ.) The validity of the assignment has been previously

22   addressed in this Order and will not be discussed here.

23   The Court finds that as Hokuto Japan assigned its

24   rights to file claims for infringement, it is not the

25   proper party under Concord's non-infringement

26   counterclaim. See Mercado-Salinas v. Bart Enters.

27   Intern., Ltd., 747 F. Supp. 2d 265 (D.P.R.

28   2010)(finding that after assignment of a trademark, the

46

assignee gains exclusive rights to the mark and has the right to sue infringers). Rather, Hokto Kinoko now has the exclusive right to sue infringers and oppose any claims made by alleged infringers for non-infringement. Therefore, the Court **GRANTS** summary judgment in favor of Hokuto Japan on Concord's claim for declaration of non-infringement.

### 5) Unfair Competition

Concord filed a third-party claim for unfair competition, under California Business and Professions Code § 17200 et seq. and under common law. Concord's statutory unfair competition claims are based on a purported group boycott of Concord by Hokuto Japan and Hokto Kinoko and their distributors of mushroom products.

Unfair competition, under California Business and Professions Code § 17200 et seq., "shall mean and include any unlawful, unfair, or fraudulent business act or practice..." Bus. & Prof. Code, § 17200. With respect to the unlawful prong, "[v]irtually any state, federal, or local law can serve as the predicate for an action under section 17200." Id.  Concord contends that Hokuto Japan and Hokto Kinoko launched a group boycott against Concord. Group boycotts are unlawful under Section 1 of the Sherman Act and when such conduct is engaged in as a "business practice" it comes within the meaning of section 17200. See 15 U.S.C.A. § 1. See also

Cal. Bus. & Prof. Code § 17200 *et. seq.*

Concord's basis for alleging a group boycott appears to stem from a November 13, 2008, letter sent by a Hokto Kinoko executive to one of its distributors shortly after learning of Concord's importation of gray market goods. As indicated in the letter, Hokto Kinoko had legitimate concerns regarding Concord's actions which "gives [goods with the Hokto Marks] an adverse brand image and also affects [Hokto Kinoko's] overall marketing strategy." [Orme Decl., ¶ 37, Ex. KK.]

Hokuto Japan maintains that no group boycott could exist for several reasons. First, no group boycott can be found when a defendant "sends letters to the wholesalers of approved service market products directing those companies not to sell to defendant" and also sends letters to franchises notifying them that [plaintiff] was the sole approved distributor" because defendant had legitimate business reasons related to the exclusion. <u>Tominaga v. Shepherd</u>, 682 F. Supp. 1489, 1496 (C.D. Cal. 1988).

Moreover, a company may freely choose who may purchase its products. <u>See</u> <u>Estey & Assocs., Inc. v. McCulloch Corp.</u>, 663 F. Supp. 167, 172 (D. Or. 1986)(noting that "this substitution of distributors is merely an exercise of the right to deal, or refuse to deal, with whomever [the supplier] defendants choose")(citing <u>Monsanto Co. v. Spray-Rite Serv. Corp.</u>, 465 U.S. 752 (1984)). Therefore, Hokuto Japan avers

48

that Hokto Kinoko's letter to a single distributor
could not be considered a group boycott by Hokuto Japan
where Hokto Kinoko sought to protect its brand image
and distribution network.

The Court finds that Concord has failed to
establish a genuine issue of fact in support of its
claim that Hokuto Japan and Hokto Kinoko engaged in
unfair competition. Concord only proffers the November
13, 2008 letter in support of its "group boycott"
theory. The Court finds that Concord bases this
assertion on a misreading in the letter that Hokuto
Japan and Hokto Kinoko threatened to no longer sell to
Hokto Kinoko's distributers if those distributors
continued to sell mushrooms bearing the Hokto Marks to
Concord. However, the Court finds that a review of the
letter indicates no such threat. [Orme Decl., ¶ 37, Ex.
KK.]

Equally important is that Concord continued to
purchase mushrooms bearing the Marks from third party
Hokto Kinoko distributor, Global Best and Yes Produce,
after the alleged "group boycott," in November 2008.
[Orme Decl., Exs. FF, NN, SS.] Both Hokto Kinoko's and
Hokuto Japan's choice of distributors "is merely an
exercise of the right to deal, or refuse to deal, with
whomever [the suppliers] choose." Monsanto Co., 465
U.S. at 752.  The Court finds that an exercise of the
right to deal does not amount to unfair competition.
See id. Nor do Concord's allegations of purported

witness tampering committed by Eva Cheung serve as evidence of unfair competition.

Therefore, the Court finds that Concord has not met its burden to prove that genuine issues of fact remain with regard to its claim for both statutory and common law unfair competition. Concord has not pointed to affirmative evidence to establish the existence of an alleged "group boycott."  In fact, the Court finds that Concord's reliance on the November 13, 2008 letter is insufficient to meet its burden under summary judgment. <u>See</u> <u>Hansen,</u> 7 F.3d at 138.  Accordingly, the Court **GRANTS** summary judgment in favor of Hokuto Japan on Concord's claim for statutory and common law unfair competition.

In sum, the Court **GRANTS** Third-Party Defendant Hokuto Japan's Motion for Summary Judgment in its entirety.

<u>C. Defendant, Counterclaimant, and Third-Party Plaintiff Concord Farms, Inc.'s Motion for Summary Judgment Against Plaintiff Hokto Kinoko</u>

Defendant Concord moves for summary judgment on its third-party claims against Hokuto Japan and on all of its counterclaims and affirmative defenses against Plaintiff Hokto Kinoko. The Court has already ruled in favor of Hokuto Japan in its Motion for Summary Judgment with regard to all of the third-party claims asserted by Defendant Concord. Accordingly, discussion

50

of the Court's position with respect to the third-party claims will not be repeated here. Rather, the Court will now address the Defendant's Motion for Summary Judgment and Plaintiff Hokto Kinoko's Motion for Summary Judgment on all of Defendant's counterclaims and affirmative defenses.

Defendant Concord's counterclaims against Plaintiff Hokto Kinoko include 1) Non-infringement on the asserted marks, 2) Non-liability for false designation of origin, 3) Non-liability for Hokto Kinoko's claim for common law unfair competition, 4) Invalidity of trademarks asserted by Plaintiff Hokto Kinoko, 5) Cancellation of trademarks asserted by Plaintiff Hokto Kinoko, 6) Declaration of License or Implied License, 7) Declaration of Laches, and 8) Unfair Competition.

The affirmative defenses include 1) Failure to state a claim, 2) Non Infringement of the Asserted Trademarks, 3) Laches, 4) Estoppel, 5) License, 6) Implied License, 7) Acquiescence, 8) Invalidity and Unenforceability of Trademarks Due to Inequitable Conduct, 9) Failure of Hokto Kinoko to join an indispensable party (Hokuto Japan), 10) Waiver, 11) Unclean Hands, 12) and Statute of Limitations.[5]

---

[5] Defendant Concord has also asserted the affirmative defenses of 1) Failure to mark and/or notify, 2) Innocent Infringement, and 3)Failure to mitigate damages. However, these are pertinent only to

## 1) Non-Infringement on the asserted marks

The Court has previously addressed Plaintiff Hokto Kinoko's claim for trademark infringement against Defendant in this Order. Therefore, the Court will not repeat its discussion of infringement here. However, as a brief review, the marks at issue here are the same and used on the same type of products, mushrooms. Moreover, there are material differences between Concord's imported mushrooms, and the Hokto Kinoko domestically grown and Japanese imported mushrooms. As such, Concord's unauthorized imported mushrooms are not considered "genuine goods." Rather, the Court finds that they are considered infringements, as a matter of law, because they materially differ from Plaintiff's mushrooms and are therefore likely to confuse consumers.

As a finding of material differences between the allegedly infringing gray market good and the registrant's product supports a finding of likelihood of confusion as a matter of law, the Court **GRANTS** Plaintiff's Motion for Summary Judgment on its claim for trademark infringement. As the Court **GRANTS**

---

the issue of damages and are not defenses to Plaintiff's claims for trademark infringement and unfair competition. As Plaintiff has not sought summary judgment on damages, the Court will not address the affirmative defenses related to Plaintiff's claim for damages.

Plaintiff's Motion for Summary Judgment on its claim for trademark infringement, the Court **DENIES** Defendant's Motion for Summary Judgment on both its counterclaim and affirmative defense for non-infringement of the asserted marks. Therefore, the Court **GRANTS** summary judgment in favor of Plaintiff and **DENIES** Defendant's Motion for Summary Judgment on both its counterclaim and affirmative defense for non-infringement of the asserted marks.

### 2) Non-liability for false designation of origin

Plaintiff Hokto Kinoko has not moved for summary judgment on its claim for false designation of origin. Although Plaintiff has indicated in its Notice Motion that it seeks summary judgment on this claim, it did not make such argument in its briefing. Moreover, Defendant Concord also moved for summary judgment on its claim for non-liability for false designation of origin, yet also failed to proffer argument with regard to this claim.

To establish a false designation of origin claim, Plaintiff Hokto Kinoko must show: (1) the defendants used a false designation of origin; (2) the use occurred in interstate commerce; (3) that such false designation is likely to cause confusion, mistake or deception as to the origin, sponsorship, or approval of defendants' goods or services by another person; and

1  (4) that plaintiff has been or is likely to be damaged.

2  <u>See</u> 15 U.S.C. § 1125(a).

3      As both Plaintiff and Defendant have failed to

4  provide the Court with proper argument and evidence

5  with respect to Plaintiff's claim for false designation

6  of origin and Defendant's counterclaim for

7  non-liability for false designation of origin, the

8  Court **DENIES** both Parties' request for summary judgment

9  on this claim.

10

11             **3) Non-liability for Hokto Kinoko's claim**

12              **for common law unfair competition**

13      The Ninth Circuit has uniformly held that common

14  law and statutory trademark infringement are merely

15  specific aspects of unfair competition. <u>New West Corp.</u>

16  <u>v. NYM Co. of California, Inc.</u>, 595 F.2d 1194, 1201

17  (9th Cir. 1979).  Under the Lanham Act, the ultimate

18  test is whether the public is likely to be deceived or

19  confused by the similarity of the marks. <u>Smith v.</u>

20  <u>Chanel, Inc.</u>, 402 F.2d 562, 563 (9th Cir. 1968).

21      As previously discussed, Defendant has not put

22  forth affirmative evidence to establish that there are

23  triable issues of fact regarding whether Defendant

24  Concord's sale of Japanese imported mushrooms that bear

25  the registered Hokto Marks is likely to confuse United

26  States consumers, who expect mushroom products bearing

27  these marks to be the same as the products normally

28  sold in the United States by Hokto Kinoko. Furthermore,

a thorough review of the likelihood of confusion factors confirms that Defendant has not met its burden to set forth facts showing that genuine issues of disputed fact remain with regard to a finding of likelihood of confusion. <u>See</u> <u>PepsiCo, Inc.</u>, 27 U.S.P.Q. 2d at 1950. In fact, the Court finds that the relevant factors support a finding of likelihood of confusion as a matter of law.

As courts have uniformly held that common law and statutory trademark infringements are merely specific aspects of unfair competition, a finding of likelihood of confusion under Plaintiff's trademark infringement claim also supports a finding of likelihood of confusion under Plaintiff's common law unfair competition claim. Accordingly, the Court **GRANTS** summary judgment in favor of Plaintiff and **DENIES** Defendant's Motion for Summary Judgment on its counterclaim for non-liability for Hokto Kinoko's claim for common law unfair competition.

### 4) Invalidity of trademarks asserted by Plaintiff Hokto Kinoko

Defendant Concord asserts two grounds for invalidity of the Hokto Marks: 1) invalidity due to naked license, and 2) invalidity due to fraud.

### I. Invalidity Due To Naked License

It is well-established that "[a] trademark owner

may grant a license and remain protected provided quality control of the goods and services sold under the trademark by the licensee is maintained." <u>Moore Bus. Forms, Inc. v. Ryu</u>, 960 F.2d 486, 489 (5th Cir. 1992). But "[u]ncontrolled or 'naked' licensing may result in the trademark ceasing to function as a symbol of quality and controlled source." McCarthy on Trademarks and Unfair Competition § 18:48, at 18-79 (4th ed. 2001).

Consequently, where the licensor fails to exercise adequate quality control over the licensee, "a court may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark." <u>Moore</u>, 960 F.2d at 489. Such abandonment "is purely an 'involuntary' forfeiture of trademark rights," for it need not be shown that the trademark owner had any subjective intent to abandon the mark. McCarthy § 18:48, at 18-79. Accordingly, the proponent of a naked license theory "faces a stringent standard" of proof. <u>Moore</u>, 960 F.2d at 489.

Defendant Concord argues that the Hokto Marks are invalid on the basis of a purported "naked license." Hokuto Japan granted an exclusive license to Hokto Kinoko to sell mushroom products bearing the Hokto Marks in the United States from August 2008 to the first quarter of 2009. In September 2009, Hokuto Japan and Hokto Kinoko formalized their relationship with

respect to the Hokto Marks by entering into a written Exclusive License Agreement. [Shigeta Decl, ¶ 3, Ex. A.] Defendant maintains that the 2009 Exclusive License Agreement entered between Hokto Kinoko and Hokuto Japan lacks provisions regarding quality control, policing quality control, and consideration. Defendant avers that this absence automatically forfeits the Hokto Marks.

In Opposition, Plaintiff Hokto Kinoko asserts that Concord bases its allegation of a purported naked license on the sole fact that the license agreement between Hokuto Japan and Hokto Kinoko did not specifically mention the quality of the goods sold.

The Court finds that while Concord is correct that the license agreement does not specifically mention the quality of goods, the absence of such a provision does not support a finding of a naked license. See Miller, 454 F.3d at 978, 992. "A naked license agreement need not contain an express quality control provision because trademark law, rather than the contract itself, confers the licensor the right and obligation to exercise quality control." Id. Concord has presented the Court with no evidence to establish that Hokuto Japan did not exercise quality control over goods sold under the Hokto Marks by its wholly-owned U.S. subsidiary Hokto Kinoko. In fact, the Court finds that Defendant Concord has not met the stringent standard of proof to maintain its naked license theory beyond

1  summary judgment. See Moore, 960 F.2d at 489.

2  Accordingly, the Court **GRANTS** summary judgment in favor

3  of Plaintiff and **DENIES** Defendant's Motion for Summary

4  Judgment on its counterclaim for invalidity of

5  trademarks asserted by Plaintiff Hokto Kinoko due to

6  naked license.

7

8                ii. Invalidity Due To Fraud

9       Defendant's arguments with regard to invalidity on

10 the basis of fraud are similar to the arguments made

11 under its claim for cancellation of trademarks.

12 Accordingly, the Court will address such arguments

13 under the discussion of Defendant's counterclaim for

14 cancellation of trademarks. However, in short, the

15 Court **GRANTS** summary judgment in favor of Plaintiff and

16 **DENIES** Defendant's Motion for Summary Judgment on its

17 counterclaim for invalidity of trademarks asserted by

18 Plaintiff Hokto Kinoko due to fraud.

19

20       **5) Cancellation of trademarks asserted by**

21            **Plaintiff Hokto Kinoko**

22       In order to prove fraud on the USPTO, the party

23 seeking cancellation must show "a false representation

24 regarding a material fact, the registrant's knowledge

25 or belief that the representation is false, the intent

26 to induce reliance upon the misrepresentation, and

27 reasonable reliance thereon, and damages." Spin Master,

28 Ltd. v. Zobmondo Entm't, LLC, No. 06-3459, 2011 U.S.

Dist. LEXIS 25261, at *21 (C.D. Cal. Feb. 22, 2011)(quoting <u>Robi v. Five Platters, Inc.</u>, 918 F.2d 1439, 1444 (9th Cir. 1990).

"The falsity and intent prongs are separate, 'so absent the requisite intent to mislead the USPTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation.'" <u>Id</u>. at *22. Thus, ["m]ere negligence is not sufficient to infer fraud or dishonesty." <u>Id</u>. The burden to prove fraud is 'heavy,' and must be shown by clear and convincing evidence. <u>Id</u>.  That heavy burden requires a "charge of fraud... be proven to the hilt ... no room for speculation, inference or surmise and, ... any doubt must be resolved against the charging party." <u>Id</u>. at *22.

Intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." <u>Levi Strauss & Co. v. Esprit U.S. Distrib.</u>, 588 F. Supp. 2d 1076, 1084 (N.D. Cal. 2008)(granting summary judgment denying cancellation of mark on allegation of fraud).

In order to survive summary judgment, the party alleging fraud must show that there is a genuine issue as to whether the failure to make a disclosure to the USPTO was made "in bad faith or with knowledge" that disclosure was required. <u>Far Out Productions, Inc. v. Oskar</u>, 247 F.3d 986, 996-97 (9th Cir. 2001). "[F]raud

will not lie if it can be proven that the statement,
though false, was made with a reasonable and honest
belief that it was true." Id.

Defendant Concord moves for cancellation of Hokto
Kinoko's trademark registrations based on allegations
of fraud on the USPTO. In support of its claim of
fraud, Concord argues that 1) Hokuto Japan's U.S.
trademark attorney had no reason to believe Hokuto
Japan had a bona fide intent to use the Hokto Marks on
all of the goods listed in the registration
applications, 2) that the U.S. attorney was willfully
blind, 3) that the U.S. attorney acted recklessly, and
4) that the U.S. attorney intended to deceive the USPTO
by failing to conduct a specific inquiry into Hokuto
Japan's bona fide intent to use the Hokto Marks on all
the goods in the application. Furthermore, Concord
argues that because Hokto Kinoko and Hokuto Japan have
not relied upon an expert report, there has been a
concession of fraud and that therefore Concord's expert
report conclusively proves fraud.

Lastly, Defendant contends that a failure to be
truthful when dealing with the USPTO results in fraud
liability and possible trademark cancellation. Hokuto
Japan argues that Concord's claim for cancelling
Plaintiff Hokto Kinoko's U.S. Marks is entirely based
on Hokuto Japan's allegedly false and fraudulent
statement that Hokuto Japan had a bona fide intent to
use the applied-for marks for all the goals listed in

the application when applying for the U.S. trademark
registrations based on the registrations it owned in
Japan.

However, Hokuto Japan avers that Concord lacks
sufficient evidence to show that Hokuto Japan acted
fraudulently.  Hokuto Japan admits that it mistakenly
included goods on the U.S. trademark registration
applications for which Hokuto Japan did not use the
Marks or have a bona fide intention to use the Marks in
the future. However, Hokuto Japan argues that its
inclusion of the goods to the U.S. trademark
registration is based upon "a misunderstanding of the
differences between Japanese and U.S. trademark
registration requirements" rather than an intent to
deceive. Moreover, Hokuto Japan recently filed Requests
for Amendment with the USPTO on June 15, 2011, to
restrict the goods listed on the registrations to those
goods on which the Hokto Marks have been and continue
to be used. On July 27, 2011, Plaintiff Hokto Kinoko
lodged with the Court amended trademark registrations
as granted by the USPTO on July 26, 2011 for the Hokto
Marks at issue in this Action.

Hokuto Japan argues that it lacked the awareness
that the U.S. and Japanese trademark registration
requirements were different, which meant that Hokuto
Japan never considered whether it had a bona fide
intent to use the Mark.  Hokuto Japan concedes that its
U.S. attorney failed to make further inquiries because

"his majority of clients were presumed to know about that requirement." However, Hokuto Japan argues that its lack of awareness regarding bona fide intent to use the Marks for all goods necessarily implies that Hokuto Japan could not have intended to misrepresent its bona fide intent to use the Marks on the goods listed in its application.

Furthermore, Hokuto Japan alleges that Concord did not suffer any damages because it did not rely on Hokuto Japan's statements to the USPTO. Hokuto Japan argues that Concord does not claim or have any ownership rights in the Marks or any other claim of damages resulting from reliance on Hokuto Japan's statements of its bona fide intent to use its marks. Therefore, Hokuto Japan argues that Concord lacks evidence to prove this element of fraud.

The Court finds that Defendant Concord's claim for cancellation of Hokto Kinoko's trademark registrations based on alleged fraud on the USPTO is factually deficient. The Court finds that Concord fails to provide evidence supporting each element of a fraud claim and relies purely on attorney argument to support its position. No evidence supports Concord's heavy burden required to succeed on its cancellation claim. The Court finds that with uncontroverted evidence that Hokuto Japan and its U.S. trademark attorney did not know or believe the bona fide intent to use statements to be false, no intent to deceive the USPTO, and no

harm to Concord, judgment as a matter of law that the trademark registrations are valid and enforceable is warranted.

Moreover, the Court finds that Defendant Concord mistakenly asserts that fraud only requires a showing of false statement in the trademark registration application and a specific intent to defraud the USPTO. Prevailing Ninth Circuit case law guides the Court to find that a claim for fraud requires more. In fact, the Ninth Circuit in Robi, specifically required a party alleging fraud show the four elements discussed above and that the party make a showing of "damages proximately resulting from the reliance." Robi, 918 F.2d at 1444.

Additionally, Concord incorrectly claims that it need not make any showing of damages based upon any misrepresentation by Hokuto Japan to the USPTO. Ninth Circuit precedent demonstrates that Defendant's assertions are without merit. In Robi, the court specifically required a party alleging fraud show "damages proximately resulting from the reliance." 918 F.2d at 1444.

In the context of summary judgment, where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue. UA Local 343 v. Nor-Cal Plumbing, Inc.,

1   48 F.3d 1465, 1471 (9th Cir. 1994).

2   The Court finds that Defendant Concord has failed
3   to meet this burden and has not pointed to specific
4   evidence to support a prima facie case for cancellation
5   of trademark on the basis of fraud. There is a complete
6   lack of factual evidence supporting Concord's claim
7   that Hokuto Japan, either itself or through U.S.
8   counsel, intended to deceive the USPTO. Concord has
9   failed to proffer affirmative evidence of any intent to
10  deceive. Moreover, the Court finds that Concord has
11  presented no facts here showing that it suffered
12  damages as a result of any misrepresentation to the
13  USPTO.

14  Additionally, the Court finds that Concord
15  unsuccessfully advances its claim for trademark
16  cancellation on the basis that Hokuto Japan's U.S.
17  counsel was willfully blind or reckless. As the Supreme
18  Court recently stated in Global-Tech Appliances, Inc.,
19  v. SEB S.A., 179 L. Ed. 2d 1167, 1179, 2011 U.S. Lexis
20  4022, *27 (2011), "a  willfully blind defendant is one
21  who takes deliberate actions to avoid confirming a high
22  probability of wrongdoing and who can almost be said to
23  have actually known the critical facts." Id. Such is
24  not the case here. Hokuto Japan admits that it
25  mistakenly included goods on the U.S. trademark
26  registration applications for which Hokuto Japan did
27  not use the Marks or have a bona fide intention to use
28  the Marks in the future. Furthermore, Hokuto Japan

recently filed Requests for Amendment, that were
granted by the USPTO, to restrict the goods listed on
the registrations to those goods on which the Hokto
Marks have been and continue to be used.

Lastly, the Court finds that Concord's reliance on
an export report does not qualify as sufficient
evidence to sustain its claim for cancellation of
trademarks beyond summary judgment.  Concord relies on
the Export Report of Amy J. Benjamin ("Benjamin
Report") that concludes the Hokto Mark registrations
were obtained by fraud on the USPTO.  However, a review
of the report demonstrates that the expert's reliance
on the applicable fraud standard was misplaced.
Concord's Benjamin Report applies the standard for
fraud from <u>Medinol v. Neuro Vasx, Inc.</u>, 67 U.S.P.Q. 2d
1205, 1209 (T.T.A.B. 2003), which the Federal Circuit
rejected in <u>In re Bose Corp.</u>, 580 F.3d 1240, 1244 (Fed.
Cir. 2009).

The Court finds that Defendant Concord's reliance
on an expert report that applies the incorrect standard
for fraud is insufficient to show a basis for granting
summary judgment in favor of Defendant. Moreover,
Defendant Concord has not pointed to specific evidence
to support a prima facie case for cancellation of
trademark on the basis of fraud. There is a complete
lack of factual evidence supporting Concord's claim
that Hokuto Japan, either itself or through U.S.
counsel, intended to deceive the USPTO. Accordingly,

the Court **GRANTS** summary judgment in favor of Plaintiff and **DENIES** Defendant's Motion for Summary Judgment on its counterclaim for cancellation of trademarks asserted by Plaintiff Hokto Kinoko.

## 6) Declaration of License or Implied License

The Court finds that Defendant Concord has not met its burden to establish a genuine issue of material fact as to whether or not it acquired an implied or express license to use the Hokto Marks. As previously discussed, Concord offers no evidence that MRT is affiliated with Maruichi and that MRT is an authorized supplier of Hokuto Japan. Rather, Defendant's purported support for this assertion is nothing more than invoices and packing lists that make no mention about MRT being an authorized distributor for Hokuto Japan or that MRT is a subsidiary of Maruichi Produce, Inc. [Posey Decl., ¶ 11, Ex. K at 56-61.]

There is no evidence submitted of any express permission given by Hokuto Japan to Maruichi to sublicense the Marks to either Concord or MRT. Therefore, the Court finds that Defendant Concord has not met its burden to defeat summary judgment on its claim that it had an express or implied license under the Hokto Marks. Accordingly, the Court **GRANTS** summary judgment in favor of Plaintiff and **DENIES** Defendant's Motion for Summary Judgment on both its counterclaim

1  for declaration of license or implied license and the
2  affirmative defenses of license and implied license.
3
4                    **7) Declaration of Laches**
5       Laches bars trademark infringement cases only where
6  the trademark holder knowingly allowed the infringing
7  mark to be used without objection for a lengthy period
8  of time. <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d
9  1199, 1209 (9th Cir. 2000).  As previously discussed,
10 the Court finds that Defendant Concord has not met its
11 burden to establish a genuine issue of material fact as
12 to whether Hokto Kinoko and Hokuto Japan acted
13 diligently in asserting their rights under the Lanham
14 Act and California unfair competition law. Defendant
15 does not cite facts to support its claim for laches.
16 Rather, Defendant relies on attorney argument to assert
17 that Hokuto Japan's trademark infringement and unfair
18 competition claims are barred by laches. Defendant
19 merely avers that Hokuto Japan delayed in filing suit
20 and both Hokto Kinoko and Hokuto Japan unreasonably
21 waited to assert any claims against Defendant Concord.
22 However, such conclusory statements do not create any
23 genuine issues of material fact. <u>See</u> <u>Hansen</u>, 7 F.3d at
24 138.
25      Equally fatal is that Defendant Concord has failed
26 to point to specific facts to show that it has suffered
27 prejudice as a result of the alleged unreasonable
28 delay. Proof of prejudice is an element of a claim for

laches. <u>See</u> <u>Jarrow Formulas, Inc.,</u> 304 F.3d at 838.
Plaintiff has failed to provide the Court with any
factual support on this element. Accordingly, the Court
**GRANTS** summary judgment in favor of Plaintiff and
**DENIES** Defendant's Motion for Summary Judgment on both
its counterclaim and affirmative defense of laches.

### 8) Unfair Competition

Concord's unfair competition counterclaim against
Hokto Kinoko is the same as the claim asserted against
Third-Patty Defendant Hokuto Japan. As previously
discussed, Concord fails to establish a genuine issue
of fact in support of its claim that Hokuto Japan and
Hokto Kinoko engaged in unfair competition. Concord has
not pointed to affirmative evidence to establish the
existence of an alleged "group boycott." In fact,
Concord's reliance on the November 13, 2008 letter is
insufficient to meet its burden under summary judgment.
Accordingly, the Court **GRANTS** summary judgment in favor
of Plaintiff and **DENIES** Defendant's Motion for Summary
Judgment on its counterclaim against Plaintiff Hokto
Kinoko for unfair competition.

The affirmative defenses, already not discussed in
this Order, in which Defendant moves for summary
judgment include 1) Failure to state a claim, 2)
Estoppel, 3) Acquiescence, 4) Invalidity and
unenforceability of trademarks due to inequitable
conduct, 5) Failure of Hokto Kinoko to join an

indispensable party (Hokuto Japan), 6) Waiver, 7) Unclean Hands, 8) and Statute of Limitations.

However, Defendant Concord also asserts the affirmative defenses of 1) Failure to mark and/or notify, 2) Innocent infringement, and 3)Failure to mitigate damages. These are pertinent only to the issue of damages and are not defenses to Plaintiff's claims for trademark infringement and unfair competition. However, as Plaintiff has not sought summary judgment on damages, the Court will not make a ruling on these affirmative defenses at this juncture.

Concord claims that it has presented evidence that Plaintiff's allegations of trademark infringement and related claims fail to state a claim because the trademarks are invalid. The Court **GRANTS** summary judgment in favor of Plaintiff and **DENIES** Defendant's Motion for Summary Judgment on the affirmative defense of failure to state a claim because it is without merit. Defendant Concord has failed to present any evidence to sustain this affirmative defense beyond summary judgment. The Court finds that there are no issues of material fact that warrant going to trial on this affirmative defense.

Additionally, Defendant Concord has raised a number of other affirmative defenses, including estoppel, acquiescence, waiver, and unclean hands. Again, the Court finds that Defendant Concord has failed to present any evidence to sustain these affirmative

defenses beyond summary judgment. Rather, Defendant has merely informed the Court that it is entitled to summary judgment on these affirmative defenses. However, conclusory allegations unsupported by factual allegations are insufficient to create a triable issue of fact so as to preclude summary judgment. Hansen, 7 F.3d at 138. Accordingly, the Court **GRANTS** summary judgment in favor of Plaintiff and **DENIES** Defendant's Motion for Summary Judgment on the affirmative defenses of estoppel, acquiescence, waiver, and unclean hands.

With regard to Concord's affirmative defense of failure of Hokto Kinoko to join an indispensable party, the Court finds that Hokuto Japan is involved in this Action and all rights amongst the Parties can therefore be adjudicated. Accordingly, the Court **GRANTS** summary judgment in favor of Plaintiff and **DENIES** Defendant's Motion for Summary Judgment on the affirmative defense of failure to join an indispensable party.

Lastly, with regard to Defendant's affirmative defense of statute of limitations, Defendant provides no evidence to sustain this defense beyond summary judgment. Defendant argues that Hokto Kinoko and Hokuto Japan waited beyond the Ninth Circuit's presumptive laches period of four years without filing a lawsuit against Concord for trademark infringement and unfair competition. The Court finds that Defendant's argument here is entirely without merit. Defendant has not pointed to any facts to suggest that Hokuto Japan or

70

Hokto Kinoko knew or could have learned of Concord's
importation of the gray market goods before November
2008.  This lawsuit was filed in February 2010. The
Court finds that this fifteen month time frame does not
constitute an unreasonable delay.  Accordingly, the
Court **GRANTS** summary judgment in favor of Plaintiff and
**DENIES** Defendant's Motion for Summary Judgment on the
affirmative defense of statute of limitations.

In sum, the Court **DENIES**, in its entirety,
Defendant Concord's Motion for Summary Judgment.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS**
Plaintiff Hokto Kinoko's Motion for Summary Judgment on
its claims for trademark infringement and unfair
competition.  As Plaintiff has not presented argument
with regard to its claim for false designation of
origin, the Court **DENIES** summary judgment on this
claim.  The Court also **GRANTS** Plaintiff's request for a
permanent injunction.

With respect to Third-Party Defendant Hokuto
Japan's Motion for Summary Judgment, the Court **GRANTS**
Hokuto Japan's Motion for Summary Judgment in its
entirety.

Lastly, the Court **DENIES**, in its entirety,
Defendant, Counterclaimant, and Third-Party Plaintiff
Concord's Motion for Summary Judgment.  The Court finds
that Concord has failed to provide sufficient factual

support for its undisputed facts and genuine issues.
By contrast, Plaintiff Hokto Kinoko and Third-Party
Defendant Hokuto Japan have presented undisputed facts
to the Court with sufficient evidentiary support that
includes more than conclusory allegations or attorney
argument.

DATED: August 16, 2011
**IT IS SO ORDERED.**

RONALD S.W. LEW
_____
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge