UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JAN 23 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HOKTO KINOKO COMPANY, a Japanese corporation, | No. 11-56461 |
| Plaintiff-counter-defendant - Appellee, | D.C. No. 2:10-cv-01384-RSWL-PLA U.S. District Court for Central California, Los Angeles |
| and | **MANDATE** |
| HOKUTO COMPANY, LTD., a Japanese corporation, | |
| Third-party-defendant - Appellee. | |
| v. | |
| CONCORD FARMS, INC., a California corporation, | |
| Defendant-counter-claim-3rd-party-plaintiff - Appellant, | |



RECEIVED
CLERK, U.S. DISTRICT COURT

1/23/14

CENTRAL DISTRICT OF CALIFORNIA
BY: ____MAT____ DEPUTY

The judgment of this Court, entered December 24, 2013, takes effect this

date.

This constitutes the formal mandate of this Court issued pursuant to Rule

41(a) of the Federal Rules of Appellate Procedure.

FOR THE COURT:
Molly C. Dwyer
Clerk of Court

Rhonda Roberts
Deputy Clerk

FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HOKTO KINOKO COMPANY, a Japanese corporation, | No. 11-56461 |
| *Plaintiff-counter-defendant – Appellee*, | D.C. No. 2:10-cv-01384-RSWL-PLA |
| and | |
| HOKUTO COMPANY, LTD., a Japanese corporation, | OPINION |
| *Third-party-defendant – Appellee*, | |
| v. | |
| CONCORD FARMS, INC., a California corporation, | |
| *Defendant-counter-claim-third-party-plaintiff – Appellant*. | |

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

Argued and Submitted
May 8, 2013—Pasadena, California

Filed December 24, 2013

Before: John T. Noonan, Kim McLane Wardlaw,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Wardlaw

2        HOKTO KINOKO CO. V. CONCORD FARMS, INC.

# SUMMARY[*]

## Trademark

The panel affirmed the district court's summary judgment and permanent injunction against the defendant in a trademark infringement action brought by a marketer of organic mushrooms.

The plaintiff alleged that the defendant wrongly imported and marketed mushrooms under the plaintiff's marks for Certified Organic Mushrooms even though the imported mushrooms were cultivated in Japan under nonorganic standards by the plaintiff's parent company. The defendant counterclaimed against the plaintiff and its Japanese parent, challenging the validity of the marks.

The panel applied principles of law governing "gray-market goods," or goods legitimately produced and sold abroad under a particular trademark, and then imported and sold in the United States in competition with the U.S. trademark holder's products. The panel held that trademark law extended to the imported mushrooms because they materially differed from the plaintiff's product both in their production and in their packaging and thus were not "genuine goods" of the plaintiff. The panel affirmed the district court's conclusion that there was no genuine dispute of material fact as to whether the defendant's marketing in the United States of foreign-produced nonorganic mushrooms under the plaintiff's marks created a likelihood of consumer confusion.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel affirmed the district court's grant of summary judgment in favor of the plaintiff on the defendant's claim that the plaintiff's trademark registration should be cancelled for fraud.  The panel also held that Japanese parent company did not abandon its right to the exclusive use of the marks by engaging in "naked licensing," or licensing the marks to the plaintiff without providing for a mechanism to oversee the quality of the mushrooms the plaintiff sold under them.

## COUNSEL

Alan M. Kindred (argued) and Ivan Posey, Kindred | Posey, Hacienda Heights, California, for Defendant-Counter-Claim-Third-Party-Plaintiff–Appellant.

David A. Dillard (argued), Christie, Parker & Hale, LLP, Glendale, California, for Plaintiff-Counter-Defendant–Appellee and Third-Party-Defendant–Appellee.

## OPINION

WARDLAW, Circuit Judge:

In this trademark infringement action, Hokto Kinoko Co. (Hokto USA), a wholly owned subsidiary of Hokuto Co., Ltd. (Hokuto Japan), sued Concord Farms, Inc. (Concord Farms) for violating its rights to marks under which it markets its Certified Organic Mushrooms, which are produced in the United States.  Hokto USA claimed that Concord Farms wrongly imported and marketed mushrooms under its marks for Certified Organic Mushrooms, but which were cultivated

in Japan by Hokuto Japan under nonorganic standards. Concord Farms counterclaimed against Hokto USA and Hokuto Japan, challenging the validity of the marks. The district court granted summary judgment in favor of Hokto USA and Hokuto Japan on all claims and entered a permanent injunction against Concord Farms. We must decide (1) whether the nonorganic mushrooms Concord Farms imported from Japan were "genuine" so as to preclude any liability for infringement; (2) whether Concord Farms's marketing in the United States of the foreign-produced nonorganic mushrooms under Hokto USA's marks created a likelihood of consumer confusion; and (3) whether Hokuto Japan's trademarks are subject to cancellation for fraud or were abandoned because it entered into a "naked licensing" agreement with Hokto USA for their use in connection with its organic mushrooms.

## I. Background

### A.  Hokuto Japan and Hokto USA

Hokuto Japan is a Japanese corporation that produces mushrooms in Japan. These mushrooms include maitake, white beech (marketed as "Bunapi"), and brown beech (marketed as "Bunashimeji") mushrooms, and are sold in 3.5 ounce packages. Hokuto Japan's mushrooms are grown in nonorganic conditions throughout Japan and sold in Japanese-language packaging.

In 2006, Hokuto Japan incorporated Hokto USA, also a Japanese corporation, to produce and market mushrooms in the United States. Hokto USA is a wholly owned subsidiary of Hokuto Japan. Like Hokuto Japan, Hokto USA produces white beech, brown beech, and maitake mushrooms. Unlike Hokuto Japan's mushrooms, however, Hokto USA's

mushrooms are certified organic and produced in a state-of-the-art facility in San Marcos, California.  Hokto USA's mushrooms are robotically transported within the facility in plastic bottles, and its entire process is computer controlled. While most mushroom-growing techniques involve manure and compost, Hokto USA uses a sterilized culture medium made of sawdust, corn cob pellets, vegetable protein, and other nutrients.  Hokto USA also enforces strict temperature controls and other quality control standards, both in its San Marcos facility and during the transportation and storage of its mushrooms, to ensure that the mushrooms stay fresh for as long as possible.

The production of mushrooms in the United States did not start off quite as smoothly as planned.  Although Hokto USA was incorporated in 2006, its San Marcos growing facility was not completed until 2009.  While the facility was under construction, Hokto USA resorted to importing mushrooms from Hokuto Japan.  Because U.S. consumers have different preferences than Japanese consumers, Hokuto Japan grew mushrooms for Hokto USA in special conditions.  Most significantly, Hokuto Japan used a special growing medium that met U.S. Certified Organic standards.  Hokuto Japan also worked with Hokto USA to develop English-language packaging for the U.S. market.  The packaging identified the mushrooms as "Certified Organic" and provided nutritional information geared toward U.S. consumers.

When the San Marcos facility finally opened in 2009, Hokto USA began producing its own mushrooms and stopped importing Hokuto Japan's mushrooms.  But in 2010, there was a shortfall of white beech mushrooms.  To meet its customers' demand, Hokto USA imported two shipments of Hokuto Japan's inferior white beech mushrooms, which were

6      HOKTO KINOKO CO. V. CONCORD FARMS, INC.

produced in Japan and sold in Hokuto Japan's usual Japanese-language packaging.    Before selling these mushrooms to U.S. consumers, Hokto USA affixed a white sticker to every package, which clearly identified the mushrooms as a product of Japan and identified the product as "white beech mushrooms." The white stickers also identified the "distributor" as Hokto USA and provided U.S. customer service information.

**B.  The Trademarks**

In 2003, Hokuto Japan acquired Japanese trademark registrations for a series of marks ("Hokto marks"), including variations on its logo and several mushroom-shaped cartoon characters with faces, arms, and legs.  These registrations protected Hokuto Japan's rights to use the marks to market a wide variety of goods, ranging from mushrooms to live fish to bonsai trees.

Hokuto Japan also sought U.S. trademark registrations on the same marks and hired a U.S. trademark attorney, Donald Hanson, to apply for them.  Believing that Hokuto Japan intended to use the marks for the same wide range of non-mushroom products listed in the Japanese registrations, Hanson applied for U.S. registrations covering those same goods and signed a form for each mark affirming that Hokuto Japan had "a bona fide intention to use the mark in commerce on or in connection with the identified goods and/or services." Hokuto Japan concedes that it never had a "bona fide intention" to use the marks in connection with most of the listed goods.

The United States Patent and Trademark Office (USPTO) issued registrations for the cartoon-character marks (Reg.

Nos. 3182866, 3179700, and 3182867) in December 2006 and for the Hokto logo (Reg. No. 3210268) on February 20, 2007, for use in connection with all of the listed goods, including those for which Hokuto Japan had no bona fide intent to use the marks.[1]

In August 2008, Hokuto Japan granted Hokto USA a license for the exclusive use of the marks in the United States. In 2010, Hokuto Japan assigned all of its rights under the American trademark registrations to Hokto USA.  Both the mushrooms sold by Hokuto Japan in Japan and those sold by Hokto USA in the United States are marketed in packaging that prominently features the Hokto marks.  After this lawsuit was filed, Hokto USA amended the list of covered goods to include only "vegetables, namely, fresh mushrooms."

## C.  Concord Farms

Meanwhile, Concord Farms, a U.S. corporation that grows and imports mushrooms, has been importing Hokuto Japan's mushrooms from Japan since 2003.  From 2003 to

---

[1] The registrations for each disputed trademark covered Hokuto Japan's use of the marks in connection with: "[f]resh mushrooms; live floral wreaths; dried floral wreaths; live fishing bait; fresh hops; raw hops; unprocessed hops; living fish for food; live seafood, namely, lobsters, raw[;] fresh and unprocessed vegetables and fruits; living sugar plants; copra; malt for brewing and distilling; living foxtail millet, common and barnyard millet plants; living sesame plants; raw, fresh and unprocessed corn; fresh, raw and unprocessed oats; unprocessed rice; living sorghum plants; protein for animal consumption; animal foodstuffs; seeds and bulbs; live trees; dried flowers; natural turf, namely, grass and lawn grass; seedlings; saplings; live flowers; hay; dwarfed potted bonsai trees; live mammals not for food, namely, fish, birds and insects; silkworm eggs; cocoons for egg production; eggs for hatching; urushi tree seeds; rough cork; and unworked or partly worked material, namely, palm tree leaves."

2009, Concord Farms imported Hokuto Japan's maitake, brown beech, and white beech mushrooms.  Since 2009, it has imported only the maitake mushrooms.  Because Concord Farms purchases these products through a series of wholesalers, Hokuto Japan was initially unaware that Concord Farms was importing its mushrooms.  The mushrooms Concord Farms imports into the United States are the nonorganic mushrooms that Hokuto Japan produces in Japan for Japanese consumption and are packaged in the Japanese packaging, which features the Hokto marks.  Concord Farms's warehouse is not temperature controlled, and Concord Farms does not impose formal limits on how long mushrooms are kept in the warehouse.

In July 2009, Hokto USA learned that Concord Farms imports Hokuto Japan's mushrooms when Hokto USA's representative saw packages of Hokuto Japan's Japanese-packaged, nonorganic maitake mushrooms mixed with packages of Hokto USA's maitake mushrooms in a grocery store display.  All of the mushrooms were under a sign that said "organic" and "made in USA," but the Japanese products under the sign were neither.  There was too much moisture in the Hokuto Japan packages, and the mushrooms were going bad.  The store's manager told Hokto USA's representative that he had purchased the Hokuto Japan mushrooms from Concord Farms.  At a produce exposition three months later, Hokto USA's representative requested that Concord Farms refrain from importing, selling, or distributing Hokuto Japan's mushrooms.  Concord Farms refused.

Hokto USA filed this trademark action in the United States District Court for the Central District of California.  All three parties filed cross-motions for summary judgment.  The district court entered judgment in favor of Hokto USA

and Hokuto Japan, and permanently enjoined Concord Farms
from selling the Hokuto Japan mushrooms in the United
States.  Concord Farms timely appeals.

## II.  Standard of Review

We review de novo the district court's grant of summary
judgment. "[V]iewing the evidence in the light most
favorable to the nonmoving party," we must determine
"whether there are any genuine issues of material fact, and
whether the district court correctly applied the relevant
substantive law." *Wendt v. Host Int'l, Inc.*, 125 F.3d 806,
809-10 (9th Cir. 1997).

## III. Discussion

### A.  Gray-Market Goods

The crux of Hokto USA's claim is that when Concord
Farms imported mushrooms bearing the Hokto marks from
Hokuto Japan and sold those mushrooms in the United States,
it infringed Hokto USA's rights to those marks.  This case
thus implicates the set of trademark principles governing so-
called "gray-market goods": goods that are legitimately
produced and sold abroad under a particular trademark, and
then imported and sold in the United States in competition
with the U.S. trademark holder's products.

The Supreme Court has explained that a gray-market
good is "a foreign-manufactured good, bearing a valid United
States trademark, that is imported without the consent of the
United States trademark holder." *K Mart Corp. v. Cartier,
Inc.*, 486 U.S. 281, 285 (1988).  The mushrooms at issue here
fit comfortably within the Supreme Court's definition.  Some

commentators apply the term "gray market" only where both the trademark owner and the alleged infringer import their product from foreign countries, *see* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 29:46 (4th ed. 2005), or only where the U.S. trademark owner also owns foreign rights in the disputed mark, *see* 1 Jerome Gilson, *Trademark Protection and Practice* § 4.05[6] (2004). Regardless of whether we categorize the mushrooms here as gray-market goods, however, the fundamental nature of the infringement claim is the same as that in gray-market cases: Hokto USA alleges that Concord Farms violated its trademarks by importing legitimately produced goods sold under those same marks. *See Am. Circuit Breaker Corp. v. Or. Breakers, Inc.*, 406 F.3d 577, 583–84 (9th Cir. 2005) (discussing ambiguity in definitions of gray-market goods and concluding that "whether this is technically classified as a gray-market case or not does not drive the solution").

**B.  Genuine Goods**

In general, the sale of gray-market goods may infringe on the U.S. trademark holder's rights, subject to the consumer confusion analysis that generally governs trademark infringement claims.  An exception to this rule, however, is that trademark law does not extend to the sale of "genuine goods."  If the Japanese-produced Hokuto Japan mushrooms that Concord Farms imported were "genuine" Hokto USA goods, then Concord Farms would not be liable for trademark infringement.  The district court correctly concluded that the mushrooms were not "genuine goods."

We have approached the "genuine good" inquiry both as a threshold question for the applicability of trademark law, and as part of the test for consumer confusion.  *Compare*

HOKTO KINOKO CO. V. CONCORD FARMS, INC.      11

*NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987) ("Trademark law generally *does not reach* the sale of genuine goods . . . ." (emphasis added)), *with Am. Circuit Breaker*, 406 F.3d at 585 (analyzing genuineness within discussion of the absence of the likelihood of confusion). *See also John Paul Mitchell Sys. v. Pete-N-Larry's, Inc.*, 862 F. Supp. 1020, 1023–26 (W.D.N.Y. 1994) (describing different courts' approaches to the "genuineness" inquiry). Here, because we confront a classic gray-market case, we must analyze the genuine goods question as a threshold matter, for if Concord Farms's mushrooms are "genuine," it is not subject to liability for trademark infringement.

### 1. The No-Material-Difference Requirement

"Genuine," in the trademark context, is a term of art: a gray-market good is "genuine" only if it does not materially differ from the U.S. trademark owner's product. *See, e.g.*, McCarthy, *supra*, § 29:51.75 ("[I]f there are material differences between the gray market imports and the authorized imports, then the gray market imports are not 'genuine' goods and can create a likelihood of confusion."); *see also Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d Cir. 1998) (explaining that where goods are marketed under "identical marks but are materially different . . . the alleged infringer's goods are considered 'non-genuine' and the sale of the goods constitutes infringement" (citations omitted)); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.*, 982 F.2d 633, 638 (1st Cir. 1992) ("It follows that the Venezuelan chocolates purveyed by Casa Helvetia were not 'genuine' . . . if they (a) were not authorized for sale in the United States and (b) differed materially from the authorized (Italian-made) version.").

We first established that trademark law does not extend to the sale of genuine goods in *NEC Electronics*. There, the question before us was whether a U.S. subsidiary of a foreign manufacturer may sue for trademark infringement where another company "buys the parent's *identical* goods abroad and then sells them here using the parent's true mark." 810 F.2d at 1508–09 (emphasis added). In *American Circuit Breakers*, applying the *NEC Electronics* rule, we explained that a genuine-goods exception "makes good sense and comports with the consumer protection rationale of trademark law" because a consumer who purchases a genuine good receives essentially the product he expected. 406 F.3d at 585. In both *NEC Electronics* and *American Circuit Breakers*, exemption from trademark law turned on whether the allegedly infringing product differed materially from the U.S. trademark holder's product.

Because the likelihood of confusion increases as the differences between products become more subtle, the threshold for determining a material difference is low. The key question is whether a consumer is likely to consider a difference relevant when purchasing a product. Courts have found a wide range of differences "material" in this context. The Second Circuit, for instance, held that Cabbage Patch dolls were not "genuine" when accompanied with fictitious "birth certificates" and "adoption papers" written in a foreign language. *Original Appalachian Artworks, Inc. v. Granada Elecs., Inc.*, 816 F.2d 68, 73 (2d Cir. 1987). The D.C. Circuit held that there were material differences between the British and American versions of dishwasher detergent where the chemical composition of the detergents differed slightly, and the British detergent was labeled "washing up liquid" rather than "dishwashing liquid" and included a "royal emblem." *Lever Bros. v. United States*, 877 F.2d 101, 103 (D.C. Cir.

1989). Along the same lines, a district court in the Central District of California, comparing the Mexican and U.S. versions of Pepsi, held that differences in quality control and the use of Spanish, rather than English, on the soda cans were material differences. *PepsiCo, Inc. v. Reyes*, 70 F. Supp. 2d 1057, 1059 (C.D. Cal. 1999). We agree that differences in language, quality control, and packaging may each be sufficiently material to render imported goods not "genuine."

## 2. Concord Farms's Mushrooms

Whether the mushrooms that Concord Farms imports from Hokuto Japan are genuine goods thus turns on whether they materially differ from Hokto USA's mushrooms. Concord Farms's mushrooms are not organic, are grown under Hokuto Japan's less extensive quality control standards, and are sold in packaging designed for domestic Japanese consumers. The Hokuto Japan packaging is in Japanese, and the packages' weights are measured in grams, not ounces. The Hokuto Japan packaging identifies the mushrooms as the "product of" the specific Japanese prefecture in which they were produced. It also displays Hokuto Japan's website and telephone number. To determine whether these Concord Farms mushrooms are "genuine" Hokto USA goods, we must compare them to the three categories of Hokto USA's mushrooms: (1) the mushrooms that Hokto USA imported from Hokuto Japan prior to the opening of Hokto USA's San Marcos, California plant; (2) the mushrooms that Hokto USA produces at its California plant; (3) and the white beech mushrooms that Hokto USA imported from Hokuto Japan in May and November 2010 to supplement its supply.

14    HOKTO KINOKO CO. V. CONCORD FARMS, INC.

The mushrooms that Hokto USA imported from Hokuto Japan prior to the opening of the San Marcos facility materially differed from Concord Farms's mushrooms both in their production and in their packaging.  Hokto USA submitted uncontradicted evidence that certified organic status is more important to American consumers than to Japanese consumers, and that Hokuto Japan used a special growing medium to ensure that the mushrooms intended for sale by Hokto USA in the United States met U.S. Certified Organic standards.  In contrast, Hokuto Japan does not use this special growing medium to produce mushrooms intended for Japanese consumption; so, when Concord Farms imported Hokuto Japan's mushrooms for sale in the United States, they did not meet Certified Organic standards.  Hokuto Japan and Hokto USA also developed packaging in both English and Japanese, in contrast to the packaging developed for Japanese consumers.  The dual-language packaging described in English the mushrooms' recommended serving size, calorie count, and other nutritional information.  We agree with the district court that these differences in production and packaging are material, rendering these imports not "genuine."

Concord Farms's mushrooms materially differ even more from the mushrooms that Hokto USA produces in its San Marcos facility.  Like the pre-2009 imports, Hokto USA's mushrooms are certified organic and sold in dual-language packaging.  At its San Marcos facility, Hokto USA uses a hygienic, computer-controlled cultivation process, which includes the robotic transport of mushrooms in plastic bottles; a sterile culture medium composed of sawdust, corn cob pellets, and other nutrients; and aggressive sterilization and temperature controls to ensure a longer shelf life.  The packaging on the domestically produced mushrooms

identifies them as a "Product of USA," provides weights in grams and ounces, and displays Hokto USA's website.

Concord Farms's mushrooms are also materially different from the white beech mushrooms that Hokto USA imported from Hokuto Japan in May and November 2010.  When Hokto imported Hokuto Japan's mushrooms because of problems at Hokto USA's San Marcos facility, it ensured that a label was affixed to each imported package.  The label included the English name for the mushrooms, listed the packages' weights in ounces rather than grams, clearly identified the mushrooms' origin, and provided a U.S. address for customer service inquiries.  It is more than likely that consumers would consider these clarifying English-language labels relevant when purchasing the mushrooms. *See Bordeau Bros. v. Int'l Trade Comm'n*, 444 F.3d 1317, 1323-24 (Fed. Cir. 2006) (explaining that "there need only be one material difference between a domestic and a foreign product" to support the conclusion that the product is not genuine).  Concord Farms's mushrooms are therefore not "genuine goods" in relation to any of the three separately sold and packaged Hokto USA products.

Even if the small batches of mushrooms imported in 2010 were not materially different from Concord Farms's imports, Hokto USA would not necessarily be precluded from obtaining relief under the Lanham Act.  Hokto USA need only demonstrate that "substantially all" of its imports were materially different from Concord Farms's imports.  *See Bordeau Bros.*, 444 F.3d at 1321.  Because we conclude that all of Hokto USA's mushrooms were materially different from those Concord Farms imported, we need not address whether two shipments of mushrooms *without* material differences would have defeated Hokto USA's argument that

"substantially all" of its mushrooms were materially different from Concord Farms's.

Rather than addressing whether Hokto USA's asserted differences are "material," Concord Farms argues that Hokto USA admitted that Concord Farms's goods were "genuine" and that Concord Farms imported "the same" products that Hokto USA sold in response to Concord Farms's request for admissions.   Concord Farms's argument, however, mischaracterizes Hokto USA's admissions and relies on misleading statements from its employees taken plainly out of context.   In a carefully cabined response to Concord Farms's request for admissions, Hokto USA admitted that "[i]f 'genuine products' refers to the products produced by Hokuto Japan, then Hokto [USA] admits this request."   In other words, Hokto USA admitted that the mushrooms were actually produced by Hokuto Japan and not counterfeit. However, Hokto USA's response does not suggest that Concord Farms's products are "the same" as Hokto USA's products.   Along the same lines, Hokto USA's employees uniformly asserted that Hokto USA imported only two sets of mushrooms, both of which materially differed from Concord Farms's: (1) those imported before the 2009 opening of the San Marcos facility, and (2) those imported during 2010 with labels affixed to the packages.   Because Concord Farms offers no other evidence that its imported mushrooms were not "materially different" from Hokto USA's mushrooms, the district court correctly concluded that they are not genuine Hokto USA goods.

## C. Likelihood of Consumer Confusion

Because Concord Farms's mushrooms are not "genuine" Hokto USA goods, Concord Farms is not exempt from

potential liability under trademark law.  The *sine qua non* of trademark infringement is consumer confusion.  To determine the likelihood of consumer confusion, we apply the long-established factors set forth in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–54 (9th Cir. 1979).  The *Sleekcraft* factors include (1) the "similarity of the marks"; (2) the "strength of the mark" that has allegedly been infringed; (3) "evidence of actual confusion"; (4) the relatedness or "proximity" of the goods; (5) the "normal marketing channels" used by both parties; (6) the "type of goods and the degree of care likely to be exercised by the purchaser"; (7) the alleged infringer's "intent in selecting the mark"; and (8) evidence that "either party may expand his business to compete with the other." *Id.*  We apply these factors flexibly, and Hokto USA need not demonstrate that every factor weighs in its favor.  *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011) (explaining that the *Sleekcraft* factors are an adaptable tool for determining consumer confusion, not a "rote checklist");  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005) ("The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them.").

Here, the first factor, the similarity of the marks, weighs unequivocally in favor of a finding of consumer confusion because the marks are identical.  The second factor, the strength of the mark, also weighs in Hokto USA's favor.  A mark is "strong" if it is particularly unique or memorable, and the more unique a mark is, the greater the trademark protection it is entitled to.  *Id*.  "Fanciful" marks, which are words or phrases invented solely to function as trademarks, receive a high level of trademark protection because they are inherently distinctive. *See Brookfield Commc'ns v. W. Coast*

*Entm't Corp.*, 174 F.3d 1036, 1058 (9th Cir. 1999) (contrasting "fanciful" marks with "suggestive" marks, "descriptive" marks and other types of less distinctive marks); *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1130 n.7 (9th Cir. 1998). The marks here, which consist of a stylized depiction of a fictitious word[2] and cartoon-character mushrooms, are unique, fanciful, and likely to be associated with Hokto USA by U.S. consumers. Hokto USA has adduced no evidence as to the third factor, actual consumer confusion. However, we have specifically recognized that likelihood of confusion may be established absent such evidence. *See Am. Int'l Grp., Inc. v. Am. Int'l Bank*, 926 F.2d 829, 832 (9th Cir. 1991).

The fourth and fifth factors, the relatedness of the goods and the parties' normal marketing channels, also weigh in Hokto USA's favor. Both Hokto USA and Concord Farms sell maitake mushrooms, and both sell them to grocery stores in the United States. Indeed, Hokto USA discovered Concord Farms's infringement because it found Concord Farms's packages of the same variety of mushrooms in the same grocery store in which it sold its own mushrooms. The sixth factor, the type of goods and the degree of care purchasers are likely to exercise, also weighs in Hokto USA's favor. We expect consumers to be "more discerning" and "less easily confused" when purchasing expensive goods. *Brookfield*, 174 F.3d at 1060. As the district court correctly noted, mushrooms are a "low-cost consumer good," and reasonably prudent purchasers are unlikely to carefully examine the mushrooms' packaging before each purchase.

---

[2] "Hokto" has no meaning in Japanese, although "Hokuto" means "northern star."

The seventh factor is the alleged infringer's intent in adopting the marks. When an alleged infringer knowingly adopts a mark identical or similar to another's mark, "courts will presume an intent to deceive the public." *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993). Here, Concord Farms imported mushrooms bearing a mark identical to that of Hokto USA's mushrooms, and it has produced no evidence to negate the presumption that it intended to confuse consumers. Thus, the intent factor also weighs in favor of Hokto USA. The final factor is whether either party is likely to expand its product lines so as to compete directly with the product sold under the allegedly infringing mark. This factor also weighs in Hokto USA's favor, as the companies already directly compete in the relevant market, and indeed sell mushrooms to the same grocery stores.

While Hokto USA failed to introduce evidence of actual confusion, each of the other *Sleekcraft* factors weighs heavily in Hokto USA's favor. The district court thus correctly concluded that there was no genuine dispute of material fact as to whether Concord Farms's importation of Hokuto Japan mushrooms is likely to confuse consumers.

## D. Concord Farms's Cross-Motion for Summary Judgment

### 1. Cancellation for Fraud on the PTO

Concord Farms asserts that Hokto USA's trademark registration should be cancelled for fraud. A party who believes he has been harmed by a trademark's registration may seek the cancellation of that trademark's registration on certain specified grounds, including that the trademark was

20     HOKTO KINOKO CO. V. CONCORD FARMS, INC.

obtained by the commission of fraud on the United States Patent and Trade Office (USPTO).  15 U.S.C. § 1064; *see also* 15 U.S.C. § 1119 ("In any action involving a registered mark the court may . . . order the cancelation of registrations . . . ").  When a trademark's registration is cancelled, its owner is no longer entitled to the rights that flow from federal registration, including the presumption that the mark is valid.

To succeed on a claim for cancellation based on fraud, Concord Farms must adduce evidence of (1) a false representation regarding a material fact; (2) the registrant's knowledge or belief that the representation is false; (3) the registrant's intent to induce reliance upon the misrepresentation; (4) actual, reasonable reliance on the misrepresentation; and (5) damages proximately caused by that reliance. *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).  A false representation in the original trademark application or an affidavit accompanying a renewal application may be grounds for cancellation if all five requirements are met.  *See* McCarthy, *supra*, § 20:58. Concord Farms, however, bears a heavy burden of demonstrating that a trademark should be cancelled.  *See Robi*, 918 F.2d at 1444. Although a material false representation regarding an applicant's bona fide intent to use a trademark for a particular purpose may satisfy the test's first requirement, material falsity "is only one aspect of the fraud claim."  *Spin Master Ltd. v. Zobmondo Entm't*, 778 F. Supp. 2d 1052, 1060 (C.D. Cal. 2011).

Here, there is no dispute that there was a material false representation in Hokuto Japan's applications to register the marks.  The applications contained a statement that Hokuto Japan had a "bona fide intention" to use the registered marks on a wide variety of non-mushroom products, ranging from

live fish to bonsai trees.  Hokuto Japan's representative admitted in deposition that Hokuto Japan had no intention to use the marks on those products.  Concord Farms has failed, however, to put forward evidence as to any of the remaining four elements of a claim for cancellation due to fraud.

Hokuto Japan asserts that the false representation was the result of its misunderstanding about the differences between U.S. and Japanese trademark registration requirements.  The American trademark attorney whom Hokuto Japan hired to register the trademarks testified that he could not recall making an inquiry to confirm that Hokuto Japan had bona fide intent to use the marks on non-mushroom products, and that it was not his usual practice to make such inquiries. Moreover, once Hokuto Japan realized its error, it filed requests to amend its trademark registration.  Concord Farms has put forth no evidence suggesting that the false statement here was anything other than the result of a simple mistake. Concord Farms adduced no evidence that Hokuto Japan knew of the misstatement made by its lawyer or intended to defraud the USPTO.  Concord Farms has also failed to put forward evidence of intent, reliance, or damages.  Instead, as the district court correctly concluded, Concord Farms relies "purely on attorney argument to support its position."  Such argument, in the absence of evidence, does not create a triable dispute of material fact.

## 2.  Naked Licensing

Concord Farms next asserts that Hokuto Japan abandoned its right to the exclusive use of the marks by engaging in "naked licensing"—specifically, by licensing the marks to Hokto USA without providing for a mechanism to oversee the quality of the mushrooms Hokto USA sold under them.

Where a trademark owner licenses the use of its mark but does not provide for the continued quality control of the goods and services sold under the mark, the trademark may cease to function as a useful marker of the product's quality or source.  When this happens, the owner is said to have abandoned the mark by issuing a "naked license," and is estopped from asserting rights in the trademark. *Barcamerica Int'l USA Trust v. Tyfield Imps., Inc.*, 289 F.3d 589, 595–96 (9th Cir. 2002).

It is undisputed that Hokuto Japan did not include formal quality control provisions in its 2008 licensing agreement with Hokto USA, which was in effect until Hokuto Japan assigned the U.S. trademark rights to Hokto USA in 2010.  However, that is not the end of our inquiry.  Even absent formal quality control provisions, a trademark owner does not abandon its trademark where "the particular circumstances of the licensing arrangement" suggest that the public will not be deceived. *Id.* at 596 (internal quotation marks omitted).  Such circumstances exist "where the licensor is familiar with and relies upon the licensee's own efforts to control quality." *Id.* (internal quotation marks omitted).  More specifically, the licensor may establish adequate quality control by demonstrating a close working relationship between the licensor and the licensee. *Id.* at 597.

Hokto USA is Hokuto Japan's wholly owned subsidiary, and the two companies worked together to develop the quality control mechanisms that Hokto USA uses in the U.S. market.  For example, Hokuto Japan specially produced the initial batches of organic mushrooms that Hokto USA imported before the San Marcos facility was completed.  Hokuto Japan and Hokto USA also jointly developed the special growing conditions that Hokto USA uses at the new

facility, and Hokuto Japan monitored the quality control of Hokto USA's mushrooms while the licensing agreement was in effect.  The two companies also worked together to create English-language packaging for the imports.  Given this close working relationship, Hokuto Japan was familiar with and reasonably relied upon Hokto USA's efforts to control the quality of the mushrooms it distributed.  Accordingly, we affirm the district court's conclusion that Hokuto Japan did not engage in naked licensing.[3]

## IV. Conclusion

We **AFFIRM** the district court's order granting Hokto USA's and Hokuto Japan's motions for summary judgment and denying Concord Farms's motion for summary judgment. We also **AFFIRM** the district court's permanent injunction enjoining Concord Farms from importing Hokuto Japan's products.

---

[3] Concord Farms cursorily mentions two other affirmative defenses, unclean hands and estoppel.  Because Concord Farms did not assert an unclean hands defense in its cross-motion for summary judgment, that defense is not properly before us.  *See Barcamerica*, 289 F.3d at 595 n.6. As for estoppel, Concord Farms neither explains the factual basis for its argument nor presents legal analysis supporting it.  Assuming that Concord Farms's assertion of estoppel is based on its argument that Hokto USA admitted Concord Farms's mushrooms were "genuine goods," the argument lacks merit for the same reason Hokto USA's alleged admission does not defeat its trademark infringement claim.